June, 1812.

### JOHN GRANNIS and MARTHA GRANNIS, his wife, *against* PIERRE E. BRANDEN.

MOTION for a new trial.

This was an action on the case. It was alleged in the declaration, that for more than six years previous to the 29th day of *March*, 1810, the defendant publicly professed and pursued the practice of physic, surgery and midwifery, in all their different branches; and professed, and claimed to possess, full and perfect skill, knowledge and science therein; that on the day and year before mentioned, while the defendant was still pursuing and exercising his profession as above stated, the plaintiffs applied to the defendant, and requested him, for a reasonable compensation, to deliver said *Martha* of a child, with which she was then in travail; and that the defendant, in consideration of a reasonable compensation to be paid to him therefor, undertook to deliver said *Martha* of the child, in a proper, careful and skilful manner. It was then averred, that the defendant, ignorantly, unskilfully and negligently, *omitted* to deliver said *Martha*, from the 29th to the 31st day of *March*, contrary to the well known rules of practice in such cases; and that, by reason of such omission, and also, by reason of his ignorance, carelessness, wickedness and want of skill, in attempting to deliver the child, the said *Martha* suffered great and unnecessary pain, was exposed to the most imminent danger of losing her life, lost her health, and received lasting and irreparable injuries and wounds; to their damage 5000 dollars, &c.

In an action on the case, brought by *A.* and *B.* his wife, against *C.*, as a physician and surgeon, for malpractice in attempting to deliver *B.* of a child, it was averred, " that the defendant ignorantly, unskilfully and negligently, *omitted* to deliver *B.*, for two days, contrary to the well known rules of practice in such cases;" and that " the defendant did so ignorantly, unskilfully and wickedly behave himself in attempting to deliver *B.*, that she suffered great and unnecessary pain," &c. " and received lasting and irreparable injuries and wounds:" Held, that particular acts of misconduct of the defendant might be given in evidence, to sustain the general allegations in the declaration; and that it was competent for the plaintiffs to shew, by what means, such injuries and wounds were received.

Held also, that evidence of the declarations of the defendant, that *B.* was infected with the *venereal disease*, and that this was the cause of the difficulty of her case, it being proved that she had not this disease, was admissible, for the purpose only of evincing the ignorance of *C.*, as to the real state of her case.

Held also, that it was competent for the plaintiffs to shew, that the defendant had not been regularly bred to his profession, for the purpose of rebutting evidence introduced by him, in support of his general professional character.

A witness may not be compelled to disclose facts, which will subject him to a criminal prosecution.

On the trial, before the Superior Court, upon the plea of *not guilty*, the jury found a verdict for the plaintiffs.

In the course of the trial, the plaintiffs offered to prove, by the testimony of Doctor *Cornwall* and others, that the defendant, while attempting to deliver the child, made an incision on its head, with a pair of scissors, or some other instrument, and therewith, at the same time, cut, injured and wounded the mother ; and also, that the defendant, for bad management and want of skill, caused a lasting and irreparable injury to the internal parts of the mother, by the violent, unusual and unwarrantable application of his finger to such parts. The defendant objected to this evidence, on the ground, that the facts above specified, were not alleged in the declaration : But the court overruled the objection, and admitted the evidence.

In the further progress of the trial, the defendant proved by the testimony of sundry witnesses, that he sustained the reputation of a skilful physician, and that such was his general character ; whereupon, the plaintiffs moved to introduce evidence to shew, that the defendant, previous to his undertaking the practice of physic, surgery and midwifery, had not been educated or instructed with a view to the practice of such professions ; but that he had been employed, altogether, in the business of a merchant or grocer, a dancing and fencing master, &c. ; to the admission of which evidence, the defendant objected ; but it was permitted by the court to go to the jury.

The plaintiffs also offered evidence to prove, that shortly after the attempt to deliver the child, was made, the defendant declared, that said *Martha* was infected with the *venereal disease*, and that this was the reason why the delivery was attended with so much difficulty. The plaintiffs, at the same time, proposed to accompany this evidence with other proof, to shew that said *Martha* was not infected with the *venereal disease* ; and thereby to evince, that the defendant treated his patient unskilfully, and through ignorance or negligence in his profession, did not understand her case. This evidence was suffered to go to the jury : but the court, upon its

admission, informed the jury, that such evidence was not admitted for the purpose of aggravating the damages on account of the slanderous declaration of the defendant ; but merely to shew the ignorance and unskilfulness of the defendant in the performance of his professional duty.

The defendant, in support of his professional character, offered to introduce the testimony of Doctor *Todd*, a skilful and eminent physician, to shew, that the witness had been called, with the defendant, to visit a certain patient, and that the defendant's prescriptions and advice, in that particular case, were prudent and correct.   This evidence was objected to, by the plaintiffs, and was by the court rejected.

The defendant also moved in arrest of judgment, for the following reasons, *viz.* that *Matthew Read*, one of the jurors who were impannelled to try the issue in the cause, while the cause was on trial, and before the jury had delivered up their verdict in court, suffered Doctor *Gilbert*, a witness in the cause, who was not of the pannel of jurors, to converse freely with him, relating to the merits of the cause.   And it was particularly stated in the motion, that *Gilbert* declared to the juror, " that the cause was a very filthy cause to be brought before the public ;" and that the juror replied, " it is so ;" and that *Gilbert* also remarked to the juror, " that the cause was too bad, or too filthy a cause to be brought before the public for discussion ;" to which proposition, the juror assented ; that *Gilbert* informed the juror, and declared in his hearing, " that the testimony of Mrs. *Smith*," (she having been produced as a witness on the trial, in behalf of the defendant,) " stood opposed to the other testimony in the cause ;" and also, that *Gilbert* declared to the juror, " that the jury might, in their verdict, do justice between the parties ; but, perhaps, they would go on wrong principles."

It was also, further stated, that *Gilbert* was by the plaintiffs introduced as a witness on the trial upon the merits, and in the course of his testimony, read certain passages from a certain treatise on physic and midwifery, in support of his opinions ; and that while the cause was on trial, and previous to giving his testimony, he exhibited such treatise to the

juror, and informed him, " he was about to read it before the court and jury ;" and that " that book or volume was the *Coke* or *Blackstone* of the law," and " that it was of equal authority in physic, as *Coke* or *Blackstone's* works were in the law." And that *Gilbert* also stated to the juror, " that he had heard Mrs. *Smith's* evidence on the trial, and had also heard the other evidence in the cause, and that Mrs. *Smith's* testimony, and the testimony of the other witnesses, was opposed ;" to which the juror assented ; and that *Gilbert* replied, " that if Mrs. *Smith's* evidence was true, and to be believed, the defendant's case would be very different, and perhaps, ought to be in his favour."

On an enquiry relating to the facts stated in the motion in arrest, *Gilbert* was introduced and sworn as a witness, and on being interrogated, declared, " that he knew nothing of any conversation, other than that stated in the motion, to have been held by him and *Read*, the juror, and objected to testifying any thing relative to such conversation, on the ground, that if he knew the facts relating to the conversation, the disclosure would tend to criminate himself." The court held, that the witness was not compellible to make such disclosure. Whereupon the defendant proposed a number of interrogatories to the witness, shaped in such a manner, that the answers would not tend directly to criminate him; but so framed as to draw from him, the principal facts stated in the motion : And the court held, that the witness was not bound to answer such interrogatories.

The defendant moved for a new trial, on the ground, that the court erred in admitting the evidence offered by the plaintiffs, and also, in rejecting that offered by the defendant, on the merits of the cause; and also, on the ground, that the court ought to have compelled *Gilbert* to testify in relation to the facts stated in the motion in arrest. The questions of law arising upon this motion, were reserved for the consideration of the nine Judges.

*N. Smith*, in support of the motion.

1. The evidence introduced by the plaintiffs, for the purpose of shewing, that the defendant injured Mrs. *Grannis*, by

June, 1812.

GRANNIS
*v.*
BRANDEN.

the improper use of scissors, &c. was inadmissible. The propriety of this evidence, depends, entirely, upon the allegations in the declaration. The real cause of action here alleged, is, that the defendant *omitted* to deliver Mrs. *Grannis* for the period of two days, in consequence of which, she suffered great pain and injury. The sin of *omission* is the *gravamen*. There is no general allegation of unskilfulness of the defendant, in the declaration. If the plaintiffs had so declared, it is admitted, that his whole conduct would have been put in issue. It is a principle too well established, to be controverted now, that no evidence can be admitted to prove a fact, which is not sufficiently alleged. The facts offered to be proved in this part of the case, are, that a pair of scissors were thrust into the head of the child, by reason of which, the mother was injured; and that the defendant injured the internal parts of her body, by a violent application of his finger, &c. These facts are not alleged in the declaration, and, therefore, cannot be proved.

2. It is contended further, that the evidence admitted to prove the previous character and employment of the defendant, was improper. It is not averred in the declaration, that he was a quack, and had not been regularly educated in his profession; but on the contrary, *it is stated, that he had pursued the practice of physic, surgery and midwifery, in all their various branches, for more than six years.* If a recovery of damages is sought, on the ground of imposition, the proper facts must be alleged. It should, in such case, be averred, that the defendant was a quack, an impostor. This would furnish an opportunity to the defendant, to shew that he had been regularly educated, and admitted to the practice of his profession. This action is brought, as it would have been, against a regular physician, alleging a particular instance of mal-practice.

In short, the evidence was objectionable on two grounds: In the first place, particular facts could not be resorted to, under the general allegations in the declaration, to shew that the defendant was not what he pretended to be, a regular physician; and secondly, that the fact of his having been

a fencing master, &c. ought not to have been proved. It ought to be borne in mind, that this action is brought against the defendant, as a professional man. Two considerations are necessary, in order to sustain the present action; first, that the plaintiffs have been imposed upon, and have been induced to employ the defendant, by his fraudulent pretensions: and secondly, that the plaintiffs have been injured. There must be both imposition and damage. It is not consistent with reason, that because the defendant gave evidence of his general character, the plaintiffs should be let loose from the restraint of all rules, and be permitted to prove particular facts not in issue.

3. Again, it is objected, that the court improperly admitted evidence of the declaration of the defendant, that Mrs. Grannis had the venereal disorder, and that she, in fact, had not that disorder. A similar declaration of the defendant, in another case, was held to be evidence of *malice ;* but it is novel indeed, that it should, at the same time, be considered as evidence of *ignorance.* If the declaration shews malice, surely, the idea of the defendant's ignorance, is excluded. It is perfectly immaterial whether this opinion of the defendant, relating to the situation of Mrs. *Grannis,* was correct or not. Has she suffered in consequence of this opinion ? Did the defendant manage her case otherwise than he would have done, if he had not been of opinion that she had had this disorder ? Did this erroneous opinion influence his conduct ? It does appear that it did. The defendant did not omit to perform the delivery, nor did he inflict any wounds, or commit any violence, in consequence of having entertained this opinion. This opinion, and the subject to which it related, was not, and could not be, in issue: The evidence was, therefore, altogether immaterial.

4. But again, it is contended, that Doctor *Gilbert* should have been compelled to testify relative to the facts stated in the motion in arrest, and to answer the questions put to him by the defendant, on the hearing upon the motion. The objection urged against this, is, that his answers would expose him to a criminal prosecution. No crime can

be imputed to a man, without a *criminal intent*. No evil intent is ascribed to *Gilbert*, in the motion in arrest. An information could not be sustained against him for attempting to corrupt the juror, without alleging a criminal intent. But, at any rate, *Gilbert* should have been required to answer some of the questions : This for instance ; " Did you not hear *Matthew Read* say, while the cause was on trial, that it was a filthy cause, and ought not to be brought for trial ?" The witness cannot be allowed to judge whether his answers will implicate him or not. This power is to be exercised at the discretion of the court. It is, surely, their duty to protect the rights of the witness, as well as the rights of the party. Of such rights the court will judge from the nature and circumstances of the case.

5. The only remaining question relates to the rejection of the testimony of Doctor *Todd*. On this subject, nothing more is required to be said, than, that upon the principles, on which the court proceeded, in admitting evidence of particular facts, under general allegations, this evidence ought to have been admitted. But, it is agreed, that the evidence was properly rejected ; and therefore, it is contended, that the evidence of particular facts, introduced by the plaintiffs, in relation to the general character of the defendant, ought also to have been rejected.

*Daggett* and *R. M. Sherman*, contra.

1. The declaration alleges, that the defendant did unskilfully and wickedly behave himself, in attempting to deliver Mrs. *Grannis*. The *gravamen* consists in two general allegations ; in the first place, that the defendant omitted to deliver the woman, and suffered her to remain in distress, for the period of two days ; and secondly, that he attempted to perform the delivery in a wicked, negligent and unskilful manner. It is not necessary to state in the declaration, particular acts of unskilfulness or mal-practice. The plaintiffs could lawfully prove such facts under the general allegations contained in the declaration. This doctrine is analogous to the practice in similar cases. In actions of *assault* and *battery*,

general allegations are sufficient. It is the constant practice, in such cases, to admit evidence of particular acts not stated in the declaration. It must be admitted, therefore, that the evidence introduced by the plaintiffs was proper. But there is one other point of view, in which this subject is to be considered. The allegations would be held sufficient, after verdict. Suppose every thing contained in the declaration, relating to the *omission* of the defendant, be stricken out; it would then be precisely and explicitly averred, that the defendant did unskilfully and wickedly behave himself in attempting to deliver Mrs. *Grannis*, by which she received lasting wounds and irreparable injury.

2. It was contended, on the trial, in behalf of the defendant, that the evidence offered by the plaintiffs, to shew, that he was not regularly educated as a physician and surgeon, was improperly admitted. This evidence was proper, on three grounds. In the first place, the defendant's want of skill was alleged; secondly, he was charged with having wickedly and negligently attempted the delivery; and thirdly, the defendant himself offered witnesses to prove his skill as a physician and surgeon. In order to shew want of skill, it is proper to shew the want of a regular education, and the absence of the necessary means of acquiring skill. This is the best, although not the only evidence of unskilfulness. When it is shewn, that the operation was not performed in the best manner, want of skill is not necessarily to be inferred; because the defendant might have acted from malicious motives. The evidence was also proper to evince a wicked intent. An attempt to practice in cases of this sort, without the necessary previous qualifications, clearly manifests extreme depravity, and evinces a general hostility towards the human race. It distinctly marks a motive, which will characterize a man's conduct through his whole life. Lastly, the defendant introduced witnesses to prove his skill in his profession. It was, certainly, competent for the plaintiffs to rebut this evidence. It was introduced by the defendant, for the purpose of shewing, that he had not rashly, and without suitable preparation, entered upon the practice

June, 1812.

GRANNIS
v.
BRANDEN.

of his important profession. It was offered in justification of his pretensions to skill in his art. Now, the plaintiffs may, surely, be permitted to shew, that he had no such pretensions: They may shew, that before he entered upon the practice of his profession, he was employed in pursuits, with which it had no connexion.

3. The evidence offered by the plaintiffs, of the defendant's declaration, that Mrs. *Grannis* was infected with the venereal disease, was proper, for the purpose of evincing his ignorance of her case. A certain piece of testimony may be proper for one purpose, and not so for another. The defendant alleged, that the existence of this disease, was the cause of the difficulty in the case. The plaintiffs proved the ignorance of the defendant, by shewing that the patient was not infected with such disease. This evidence, then, was proper to evince the ignorance of the defendant as to the true state of the patient's case; and, connected with other circumstances, might shew his malice.

4. The next question which remains to be considered, is, whether Doctor *Gilbert* was bound to disclose the conversation stated in the motion in arrest, to have been held between him and *Read*, the juror? and whether he was compellible to answer the interrogatories proposed by the defendant? It is now perfectly settled, that a witness cannot be compelled to disclose facts, which will subject him to a public prosecution. *Raynes* v. *Spicer*, 7 *Term Rep.* 178. 1 *Mac Nally*, 256. All manner of interference with a jury, is an offence at common law, and gives a right of action to the party injured. Any interference of this kind, and every thing which has a tendency to corrupt a jury, constitutes the offence known by the term "Embracery." 1 *Hawk.* P. C. 548, 549, 550. It is said, that the witness was not actuated by any criminal intent, in holding the conversation with the juror. Suppose a horse is stolen, can a witness be compelled to shew, that he took the horse, for the reason that it would be no offence, if it were not taken *animo furandi?* Suppose also, a conversation with a member of a legislative body, concerning the establishment of a bank, and a bribe is offered to the

June, 1812.

GRANNIS
v.
BRANDEN.

member to induce him to favour the project, can this man be compelled to testify relative to these facts, merely because he was ignorant of the impropriety of the transaction? or because he thought it proper? If the act is criminal in its nature, the law presumes it, *prima facie,* to have been done with a criminal intent.

MITCHELL, Ch. J. (After stating the case.) The first objection, on which the present motion is grounded, is, that no evidence ought to have been admitted, on the trial, relating to the wounds inflicted by the defendant, upon the plaintiff's wife; because, the only point in issue between the parties, was, whether the defendant had neglected to perform his professional duty. This objection proceeds from a misconception of the cause of action. The *gravamen* is the defendant's ignorance, negligence and want of skill; which may be as clearly evinced, by mis-feasance, as by non-feasance; by positive acts, as well as by negligent. The declaration clearly shews, that the action is founded on both grounds. The defendant is charged, not only with ignorance and negligence, in permitting the plaintiff's wife to remain in great distress, for two days, but with an attempt to deliver her in an unskilful manner, pursuing a course of practice not warranted by, and contrary to, the established rules of proceeding in similar cases.

The plaintiffs sustained damage in both ways: That is to say; the plaintiff's wife endured great pain, and was in imminent hazard of her life, from the omission and negligence of the defendant; and she also received irreparable injury and lasting wounds from his unskilful practice. If, then, the whole declaration, taken together, contains several distinct allegations, all going to constitute the *gravamen,* or one single cause of action, all being parts of the principal charge, there can be no doubt, that all these allegations may be proved, as pertinent to the issue. To warrant the admission of such proof, it is sufficient, if such allegations appear in the declaration. The *allegata et probata* must agree. This is the only criterion, by which the court can determine as to the rele-

vancy of the testimony offered on the trial. If the facts alleged in the declaration, constitute two or more distinct causes of action, which cannot be joined, the defendant should seek redress by motion in arrest.

Again, it is further objected, that the several particular circumstances attending the transaction in question, ought to have been explicitly and distinctly set forth in the declaration, to warrant the admission of the evidence ; or that all the facts intended to be proved on the trial should have been stated in the declaration. But this is not necessary, according to the rules and precedents in analogous cases. In actions of *assault* and *battery*, a general statement is sufficient to let in proof of particular acts, and all the circumstances attending the transaction ; and there is sufficient precision, if the cause of action be so defined, that the party may plead the judgment in bar of another suit for the same cause.

It is apparent, that the allegation relating to the wounds received by the plaintiff's wife, were introduced for the purpose of laying a foundation for a claim to damages, either as a part of the cause of action, or by way of aggravation : In either case, the judgment would be a good bar to another action brought for the same cause.

Besides, there are many cases, where the law, to preserve the chastity of the record, admits generality in the statement of facts; although such general mode of declaring, would not be strictly conformable to technical rules, in other cases. In this case, there is no necessity of resorting to this principle ; for the fact proved on the trial, was sufficiently stated in the declaration, to warrant the admission of proof of all the attendant circumstances.

It is also claimed, that the court erred in admitting evidence to shew, that the defendant falsely, or improperly, pretended, that the plaintiff's wife was infected with the venereal disease. This was proper evidence for the consideration of the jury, if introduced for the purpose of shewing, that the defendant was ignorant of the true state of the patient's case : And if the defendant himself, who might be supposed to make the best of his case, had alleged the existence of such a dis-

ease, as the only cause of his ill success, the plaintiff, by disproving this charge, might furnish good ground for the jury to infer, that the want of success was attributable, solely, to the ignorance or misconduct of the defendant. For this purpose alone, the evidence was admitted; as the court charged the jury, that it was not to be considered as enhancing the damages. In this view, the evidence was proper.

The next objection relates to the admission of evidence to shew the general character of the defendant, and that he was not a regularly educated physician and surgeon. Such evidence would have been improper, if it had been offered to increase the amount of damages. In such case, it would have been considered as setting up a new and distinct cause of action, inconsistent with the allegation in the declaration. But the defendant, in the first place, introduced evidence of his general character, to raise a presumption in favour of his skill and knowledge in his profession. It then became necessary, and it was competent, for the plaintiffs to rebut this proof. This is analogous to established principles of law. Whenever the character of a party is not immediately in issue, and cannot be directly impeached, in the first instance, yet, if he himself, first introduces evidence in support of it, the other party shall be permitted to rebut the evidence, by impeaching his general character; the party himself having put it in issue. The defendant himself laid the foundation of this evidence, by first introducing witnesses in support of his character. Whether the evidence was properly admitted, is not now the question.

It is also insisted, that the court, on the circuit, ought to have compelled Doctor *Gilbert*, a witness, to answer the questions put to him on the trial of the motion in arrest, relating to certain improper conversations between him and one of the jurors, while the jury had the cause under consideration. It ought to be remarked, that before any particular questions were suggested, a general enquiry appears to have been made, of the witness, relating to the subject matter of the motion, who replied, " that he knew nothing of any conversation, other than was stated in the motion, to

have been held between himself and one *Read*, a juror." The only conversation stated in the motion in arrest, between the witness and *Read*, was one in which both took a part, and consisted of certain remarks and assertions, made by the witness, to which, the juror barely replied or assented. Hence, whatever might have been the conversation, it is evident, that the witness was a partaker, or at least, equally concerned with the juror; especially, as the witness was the instigator, and prime mover, of the conversation. This answer contains, first, any declaration or conversation, by any other juror than *Read*, in the presence or hearing of the witness, relating to the cause.    And secondly, a denial of any declaration whatever, made even by *Read*, in his presence or hearing, except such as had been made by way of reply to his own remarks, and in concurrence with them; because no other declaration or conversation was detailed in the motion; and the witness had, by his general answer, limited his knowledge of any conversation, to that which was stated in the motion, to have been held between him and *Read*. In that conversation, it appears from what has already been stated, that he must have been as much implicated as the juror; and he refused to disclose it, because it was of such a nature, that he could not testify to any part of it, without criminating himself. The general answer of the witness embraced all the particular questions afterwards proposed; and the court was not bound to require the answer to be repeated.

The only remaining question relates to the validity of the objection of the witness, (Doct. *Gilbert*,) to disclose the conversation, which took place between him and the juror. The witness assumed the right of determining whether the disclosure would criminate himself.    If he is to be considered as the sole judge of the effect of his testimony, as it relates to himself, it is immaterial whether he decide the question right or wrong.    The court, on this principle, can enquire no further.    If he testifies, that his disclosures will expose him to be prosecuted criminally, it is conclusive.    The court cannot compel a witness against his will, to disclose facts which

will expose him to a criminal prosecution. *Nemo tenetur seipsum accusare.* But the application of this principle, in every case, so as to preserve the rights of the party, the prerogative of the court and the privilege of the witness, is attended with some difficulty. On the one hand, it may be said, that the witness has no right to deprive the party of the benefit of his testimony, by any false conceit of his own, or an incorrect opinion of the law; and on the other, it may be contended, that if the court should claim, exclusively, the right to determine in all cases, they must first compel the witness to disclose his answer, before they can decide the question; which would effectually deprive him of the protection which the law intended to afford him. The witness alone can know what his answer must be; and he only can determine how it may affect or expose him. Although the question may appear to the court, to be indifferent, yet, the witness may be sensible, that it would supply a link in the chain, which would lead to a conviction for a crime. Such was the question to the Roman Catholic priest, reported in the books. He alone could see how an answer, agreeable to the truth, would subject him to penalties; and the court had no *data* by which to decide, without first compelling the witness to surrender his privilege, and furnish evidence for his own conviction.

There is a difficulty in establishing a general rule, which will effectually preserve the rights of the witness, and at the same time, protect the party against a corrupt design of the witness, to hide behind the shield of his privilege, facts important to him, and such as would not implicate the witness.

But in this case, there is no necessity of deciding the question. It appears, clearly, that an affirmative answer, would have implicated the witness in a crime; and that a disclosure of any part of the conversation stated to have been held with the juror, would have fixed upon him the crime of *Embracery.* The conversation with *Read*, as stated in the motion, consisted entirely of remarks made by the witness, respecting the nature of the cause, and the nature and character of the evidence offered on the trial, or the principles, on which the

VOL. V.                                    K k

June, 1812,

GRANNIS
*v.*
BRANDEN.

June, 1812.

GRANNIS.
*v.*
BRANDEN.

jury ought to decide the case under their consideration. The remarks thus made, were obviously calculated to influence the juror in favour of one party, and against the other. Indeed, the motion in arrest is grounded upon the undue influence or bias, which the conversation was calculated to excite in the mind of the juror. This amounts to *Embracery;* which consists in an attempt to influence a jury corruptly : whether this be done by persuasion or bribery, is immaterial. It is acknowledged to be a crime of deep hue, polluting and corrupting the source and fountain of justice ; and if the facts stated in the motion, could be proved, both the witness and juror would be liable to punishment. When the witness, in his answer to the question proposed to him, limited his knowledge respecting the conversation with the juror, to the facts stated in the motion, it must have been perfectly obvious, that he could not disclose the conversation, nor any part of it, without implicating himself in the crime of *Embracery.* It became the duty of the court, therefore, to protect the witness in the enjoyment of a privilege, which he had a right to claim ; and which the law secures to him, upon the soundest principles of policy, and the plainest dictates of reason.

I am of opinion, therefore, that a new trial ought not to be granted.

In this opinion the other Judges severally concurred ; excepting INGERSOLL, J., who having been of counsel in the cause, did not judge.

New trial not to be granted.