*Isham*, for the defendant.

——～o～——

WINDSOR COUNTY, FEBRUARY TERM, 1827.

*Josiah Crooker* vs. *Titus Hutchinson* and *Isaac N. Cushman.*

An attorney who is employed to collect a debt is liable to his client, if he neglect, without fresh instructions to pursue the bail of the debtor in due time.—— And though the bail is insolvent, yet if there is reasonable ground to believe that the officer will be liable, upon a failure to collect of the bail, the bail should be pursued for that purpose.

K

Wheie an attorney, by neglecting to issue a *scire facias* against insolvent bail, has lost the right of prosecuting the officer who was clearly liable for taking insufficient bail, he is liable to his client to the same extent as if the bail were good.

The remedy against the officer in such a case may be estimated as equivalent to that against sufficient bail, subject to the right of such bail to surrender the principal in his own discharge.

THIS was an action on the case against the defendants for neg- ligence as attornies, and was tried upon the *general issue* at the last December term of the County Court, Chief Justice SKINNER, presiding. The plaintiff and another person, since deceased, being joint creditors of *Richard Merriam*, retained the defend- ants, then attornies in partnership, to collect their debt. The defendants accordingly prayed out and delivered to the sheriff a writ of attachment upon which *Merriam* was arrested on the sixth day of January, A. D. 1818, and one *Willard*, became his bail by endorsing the writ in common form. Judgment was ob- tained against *Merriam*, and an execution seasonably issued, upon which a *non est inventus* was duly returned ; but the defendants omitted to institute a *scire facias* against *Willard* within a year after judgment, by which he was discharged. For this neglect the present action was brought, alleging that the plaintiff's debt was thereby lost.

By the bill of exceptions allowed in the case it appeared, that the defendants on trial introduced evidence tending to show that *Willard*, when taken as bail, was ostensibly good and sufficient for more than the demand in suit ; having two farms in possession, with considerable personal estate, which was mostly sold on ex- ecutions on and near the day of his becoming bail. Which show- ing was met by proof on the part of the plaintiff, that the farms a- foresaid were encumbered with mortgages, and that *Willard* was otherwise embarrassed with debts and owed one thousand dollars more than he could pay. *Willard* lived about twelve miles from the defendants, who had then no particular acquaintance with his circumstances. Previous to the judgment against *Merriam*, *Willard* had become very poor and sworn out of jail. During the whole time, until after a year from the recovery of judgment against *Merriam*, the plaintiff lived within two miles of the de-

fendants, and during the latter pe- } Windsor, Feb. 1827.
riod was daily in the village where } *Crooker* vs. *Hutchinson & Cushman.*
their office was kept, and occasionally transacted business with
them. The defendants had received nothing on account of their
costs, but had discharged the same. It was stated on trial by the
counsel for the defendants, that after the year had elapsed they
issued a *scire facias* against *Willard.* Afterwards in the course
of the trial, when this fact was attempted to be shown on the part
of the plaintiff by the production of such a writ, said to have been
commenced and prosecuted by the defendants, the evidence was
objected to and excluded as being irrelevant. The plaintiff
showed that at a *Nisi Prius* term of the Supreme Court for *Wind-*
*sor County* holden in September, 1820, and about one month be-
fore the year for issuing a *scire facias* had elapsed, the sheriff
was adjudged to be answerable at the suit of one *Reed* for having
accepted *Willard* as bail shortly after he was so received as bail
in the suit of the plaintiff:—the court holding that to justify the
officer the bail when taken must be actually sufficient, and not so
in appearance and reputation merely. And with a view to show
that the defendants had knowledge of said decision, they not hav-
ing been counsel in the case, the plaintiff offered to prove that in
February, 1821, a conversation took place between the plaintiff,
the sheriff, and the defendant *Cushman,* wherein the sheriff offer-
ed to pay fifty dollars, rather than incur the expense of bringing
*Merriam* from the state of New York to surrender him in discharge
of *Willard ;* that the plaintiff offered to accept one hundred dol-
lars, but that after a short consultation between him and *Cushman,*
the latter informed the sheriff that he thought it could not be set-
tled, as he considered him holden for the whole debt. This evi-
dence was objected to but admitted by the court for the purpose
aforesaid. The defendants introduced evidence tending to show
that *Merriam* was insolvent and poor, at the commencment of the
suit against him and had remained so ever since. It further ap-
peared that in argument to the jury the closing counsel for the
plaintiff for the first time alleged the fact that the defendants caus-
ed a *scire facias* to be issued against *Willard* after the year had
expired ; relying on the aforesaid declaration of their counsel.—
To this course of argument the defendants objected, insisting that

the evidence as to the issuing of the supposed writ had been excluded ; but the court declined to interfere. The court among other things gave in charge to the jury, that if they should find from the circumstances appearing in evidence, that the defendants had knowledge of the decision in the aforesaid cause in favor of *Reed*, in season to have brought a *scire facias* within the year, and neglected to bring it, their verdict should be in favor of the plaintiff. And in that event, the rule of damages should be the same as if *Willard* had been actually good when taken as bail.— To all the above decisions of the court and so much of the charge as above detailed the defendants excepted. A verdict was returned in favor of the plaintiff for $42,00—and the judgment thereon was respited to await the decision of this court upon the questions of law arising at the trial.

*Hutchinson* and *Everett* for the defendants. The evidence of the conversation with *Cushman* in February, A. D. 1821, had no tendency to prove that the defendants had knowledge of the decision in *Reed's* case in season to have brought a *scire facias*. It had no pertinent bearing upon the cause, but was calculated to mislead the jury, especially as to the damages. The closing counsel for the plaintiff should have been restrained from commenting upon the writ of *scire facias* supposed to have issued after the year. It was making a new point in the close which was unsupported by evidence. Too much importance was attached by the court to the decision in *Reed's* cause. The opinion of a single judge at *Nisi Prius*, innovating upon a course of previous decisions and a settled practice, has not the authority of law beyond the case in which it is given. The court were mistaken in laying down the rule of damages. A *scire facias* seasonably issued must have terminated in the surrender of *Merriam* or a judgment against *Willard*, and neither would have been of any value to the plaintiff. How then can it be said that the damage to the plaintiff is the same as if *Willard* was good ? It may be said that a judgment against *Willard* would have laid the foundation for a suit against the sheriff. Even then we are unable to see by what rule it follows, that the privilege of prosecuting such a suit is to be estimated equal to a judgment against responsible bail. The

plaintiff must be taken to have ⎰ · Windsor, Feb. 1827.
known all the circumstances, and ⎱ *Crooker*, vs. *Hutchinson* & *Cushman*. should have directed a suit against *Willard* if he judged it expedient.

In so plain a case of insufficient bail as the present, the sheriff was liable immediately on the return of *non est inventus*, and no *scire facias* against *Willard* was necessary.—17 *Mass.* 60, *Matthew* vs. *Green*.

The charge excludes that honest discretion which attornies must always exercise about bringing doubtful or fruitless actions. 8 Mass. 51.—4 *Bur.* 2061.—2 *Chip.* 124.—They also cited upon the question of damages—1 *Johns.* 215, *Pallet* vs. *Lansing*. —7 *Johns.* 189, *Russell* vs. *Turner*.—2 *Mass.* 526, *Burrell* vs. *Lithgoe*.—10 *Mass.* 470.—11 *Id.* 188.—12 *Id.* 127.—13 *Id.* 187.—16 *Id.* 294.—2 *Wils.* 325.—2 *T. R.* 127.

*Marsh* was heard on the part of the plaintiff. He cited 15 *Mass.* ·316.—2 *Chip.* 117.—*Ver. Stat.* 72, 97.

Royce, J. delivered the opinion of the court.    Attornies in matters of collection are to follow implicitly the directions of the creditor ; and in the absence of the client and of special instructions, they should diligently prosecute such measures as they may reasonably suppose the client would direct, if applied to and made acquainted with all the circumstances.    In other words they are, without express direction, to take every step in the course of collection which is apparently for the interest of the creditor.    In the present case the suit against *Merriam* was expressly directed, and the defendants in the prosecution of that suit had therefore no discretion to exercise, though *Merriam* was poor.    But any after-suit against the bail or the officer, not being in the view of the parties at the time of the original retainer, would, without further instruction, be matter of discretion with the defendants, to be prosecuted or forborne as the interest of the client should seem to require.    It has been contended that the plaintiff had knowledge of all the facts in this case, and should have directed the *scire facias* if he thought it for his benefit.    This was assuming more than the case has shown ; for though the plaintiff should have known the circumstances of *Merriam* and *Willard*, it does not result that he must also have known the precise situation of his demand in the

care of the defendants. But how-- ever this may be, there is a known distinction between disputable actions and proceedings for the collection of an undisputed debt. In the one case, the attor-- ney expects his client to communicate facts and give instructions as the cause proceeds; in the other, the client has a right to expect, when the employment is general, as in this case, to collect the debt, that all ordinary proceedings will be taken in due succes- sion which have a probable tendency to further the collection. It follows that to excuse the defendants for omitting to issue a *scire facias* in time, it should appear that the plaintiff had consent-- ed that none should be commenced, or that no probable benefit to the plaintiff would be produced thereby. The latter question is alone to be considered, as no interference of the plaintiff is pre- tended. The poverty of the principal and bail, would seem to have rendered useless any additional suit for the mere purpose of obtaining a surrender of *Merriam* in execution or a judgment a- gainst *Willard.* But as the latter might lay a foundation for pro- ceedings against the Sheriff, it became the duty of the defendants to consider the subject in view of that contingency. The enqui- ry then arises, whether they had reason to believe that the sheriff could be rendered liable. As the law had been generally under- stood, until the decision in *Reed's* case, it was sufficient for an offi-- cer to show, that bail taken by him on *mesne process*, was general- ly reputed to be good, and was so ostensibly at the time of taking. By this reputation and appearance of sufficiency we must under- stand such a reputation and appearance, as would be learned, by a reasonable enquiry and examination among those most likely to know the circumstances of the party. Now it turns out that when *Willard* was accepted as bail by the sheriff, the real estate in his possession was encumbered with mortgages, a great share of his personal property was then in execution, he was otherwise embarrassed with many debts and was deeply insolvent. These are matters of too much publicity to have escaped the notice of the sheriff upon a proper enquiry. The defendants were well appris- ed of the subsequent poverty of *Willard*. From all this, it must be inferred that, without reference to the supposed alteration of the law in *Reed's* case, a probable cause of action would have ac--

Windsor, Feb. 1827.

Crooker vs. Hutchinson & Cushman. crued against the sheriff, upon a failure to collect of *Willard*, when duly prosecuted and fixed with the debt. And as a consequence, the defendants must be answerable to the plaintiff for whatever damage he has suffered, in the loss of this cause of action against the sheriff, through their neglect to take the previous measures against *Willard*. It is argued however, that the sheriff was liable without a *scire facias* against *Willard*. This admits of two answers ; *first*, that the position, as applicable to this case, cannot be supported. As such a principle tends to accelerate the liability of the officer, and takes away the privilege of surrendering the debtor, it can justly be applied to no case, where the officer can be supposed to have acted in good faith. But *secondly*, if the sheriff was thus liable, it is not discovered how the defendants were excused from pursuing that liability.

This view of the case renders it of little importance to consider what passed at the trial, relative to the evidence admitted, and the argument raised, as to the defendants' knowledge of the decision above alluded to. It is sufficient to say that the evidence was not inadmissible, but entitled to little weight.

It only remains to consider that part of the charge to the jury relating to the rule of damages. The jury were instructed that the defendants, if justly chargeable with a culpable neglect, were liable to the same extent as if *Willard*, when taken as bail, had been amply responsible. This was making the ultimate remedy against the sheriff for taking insufficient bail, equivalent to a remedy against sufficient bail, subject to the right of such bail, to surrender the principal in his own discharge. It may be true, as contended in argument, that a perfect equality in the two cases does not exist ; and yet it may be difficult, in view of the statute and the decisions under it, to frame a rule which would be less objectionable. We think it sufficiently accurate for the present purpose, especially since we learn from the smallness of the verdict, that the jury have measured the liability of the defendants, with reference to the chances which the plaintiff had of securing or losing his debt, if no neglect had happened. Judgment is therefore to be entered upon the verdict.

*Marsh*, for the plaintiff.

*Hutchinson* and *Everett*, for the defendants