## LEIGHTON *v.* SARGENT.

A physician or surgeon, without a special contract for that purpose, is never considered as warranting a cure.

His contract, as implied in law is, that, 1. he possesses that reasonable degree of learning, skill and experience which is ordinarily possessed by others of his profession ; 2. that he will use reasonable and ordinary care and diligence, in the treatment of the case, committed to him ; 3. that he will use his best judgment, in all cases of doubt, as to the best course of treatment.

He is not responsible for want of success, unless it is proved to result from want of ordinary skill, or want of ordinary care and attention.

He is not presumed to engage for extraordinary skill, or for extraordinary diligence and care.

He is not responsible for errors of judgment, or mere mistakes in matters of reasonable doubt and uncertainty.

Where the declaration against a surgeon alleged that the plaintiff sustained injury from the *want of skill* and *mere neglect* of the surgeon, in the treatment of a fracture, it was held that evidence that the defendant had received a good surgical and medical education, and was a regularly educated and skilful surgeon and physician, was admissible, because it tended to disprove a material allegation of the declaration.

TRESPASS on the case. The declaration contained two counts, as follows :

" In a plea of trespass on the case, for that whereas the defendant was, is, and for many years last past has been, a physician and a surgeon, and during all the time aforesaid had exercised and carried on, and still exercises and carries on, the art, mystery and profession of physician and surgeon, to wit, at Strafford aforesaid ; and while the said defendant so used, exercised and carried on the said art, mystery and profession of physician and surgeon as aforesaid, to wit, on the 1st day of September, A. D. 1850, the said plaintiff employed the said defendant, for a reasonable reward to be therefor paid, by the said plaintiff to the said defendant, to treat, set, cure and heal the right ankle and foot of the said Leighton, which he then and there had dislocated, put out of joint, disruptured, broken, fractured, wounded and bruised ; and although the said defendant did then and

Leighton *v.* Sargent.

there pretend and attempt to treat, set, cure and heal the said ankle and foot of the said plaintiff, dislocated, put out of joint, disruptured, broken, fractured, wounded and bruised as aforesaid ; yet the said defendant then and there so negligently, carelessly and unskilfully behaved and governed himself, in and about the setting, treatment and care of the plaintiff's said ankle and foot, that, for the want of skill and the proper application of splints, and the application of proper medicaments and remedies thereto, and by and through the mere neglect, default and unskilfulness of the said defendant, in that behalf, as a physician and surgeon, the said ankle and foot of the said plaintiff became greatly inflamed, swollen and festering, and remained so inflamed, swollen and festering for a long space of time, to wit, for the space of eighteen months, and finally became stiff, set, immoveable and fixed in an unnatural position, carrying the toes of the said right foot lower than the heel of the same foot, to wit, four inches lower than the heel of the said right foot, and the said ankle and foot remained, and ever since have been and now are, stiff, set, immoveable and fixed in an unnatural position as aforesaid, whereby the said Leighton suffered, and still suffers, great pain and distress; and so the said ankle and foot were not set, cured and healed, but, on the contrary, in consequence of the unskilfulness, negligence and carelessness of the said defendant in the premises, the plaintiff's said ankle and foot have become set, stiff, immoveable, and fixed in an unnatural position, incurable and almost wholly useless, whereby the said Leighton has been, and still is, unable to move and walk about without the aid of canes, crutches or other aids, or to labor or do any work, and has suffered, and still suffers, great bodily distress and pain."

The second count is in the same form to the words " and remedies thereto," and adds " and the default and neglect of the defendant, in not properly extracting and removing the splints and fractured bones therefrom, and by and through

the mere carelessness, negligence and unskilfulness of the said defendant, in that behalf, as a physician and surgeon, the said ankle and foot of the plaintiff then and there became greatly inflamed, virulent, corrupt and festering, and a mass of gathering putrid sores, and remained so inflamed, virulent, corrupt and festering, and a mass of gathering putrid sores, for a long space of time, to wit, from thence to the day of the date hereof, and have finally become stiff, weak and almost wholly useless, and the said foot and ankle remained, ever since has been, and is now, inflamed, virulent, corrupt and festering, and a mass of gathering putrid sores, whereby the said Leighton suffered, and still suffers, great pain and distress; and so the said ankle and foot of the said plaintiff were not cured and healed, but, on the contrary, in consequence of the carelessness, neglect and unskilfulness of the said defendant in the premises, the plaintiff's said ankle and foot have become weak, inflamed, corrupt, festering and a mass of gathering putrid sores, and incurable, whereby the said plaintiff has been, and still is, lame, decrepid and unable to walk without canes, crutches, and other aids, and has been, and still is, unable to labor or do any work, and has suffered, and still suffers great bodily pain and distress."

Upon the trial, upon the general issue, it was proved that on the 1st of September, 1850, the plaintiff, in consequence of being thrown from a carriage, sustained a severe injury, in and about the ankle, of such a character that, under skilful treatment, it might be expected to result in the stiffness and loss of the use of the ankle joint; that the defendant was employed as a surgeon to attend upon the plaintiff and treat the case, and did so attend from the day the injury was received until about the 12th of January following, and attempted the cure of said injury.

On the part of the plaintiff, it was contended that the defendant neglected to place and keep the foot in a position at or nearly at right angles with the leg, but, on the contrary,

Leighton *v.* Sargent.

suffered it to become fixed with the forward part of the foot depressed at an angle of about thirty or forty degrees with the leg, whereby the limb was rendered useless in walking; and that by proper treatment and the application of proper means, on the part of the defendant, it might have been fixed, if the ankle joint became stiff, in a position at or nearly at right angles with the leg; and thereby have been much more serviceable and useful to the plaintiff; and this was the principal ground upon which the plaintiff claimed to recover damages.

The defendant objected that under the form of declaration, in this case, the action could not be maintained upon that ground, but the court held otherwise, and overruled the objection.

The plaintiff, having introduced evidence tending to show unskilful and improper treatment of the case by the defendant, the defendant then offered to prove that he had received a good medical and surgical education, that he had attended a course of instruction in surgery, at a medical school of high reputation, and had otherwise received good, scientific tuition in surgery, and was a regularly educated and skilful surgeon and physician, to which the plaintiff objected, and the court rejected the evidence.

The defendant introduced evidence tending to show that he used means to bring the foot up, and to keep it in the proper position; and he introduced, among other witnesses, Mrs. Jones, who testified that on one occasion, when at the plaintiff's house, while he was under the care of the defendant, she saw a book placed behind the foot board of the box in which the injured limb was placed, in such a manner as to raise the footboard, and the foot resting against it, to a position nearly at right angles with the leg.

The plaintiff's counsel, by the course of the cross-examination, attempted to throw discredit upon this statement of the witness, and also introduced evidence tending to show that said foot board was not raised up in the manner stated

by the witness, by means of a book, or any other substance placed behind it. The defendant, for the purpose of cor-roborating the statement of said witness, then proposed to prove, by the husband of the witness, that she stated to him, on her return home from the plaintiff's house, on the occasion referred to, that she saw the book behind the foot board, raising it up, as testified by her upon the stand. To this the plaintiff objected, and the court rejected the evi-dence.

The jury returned a verdict for the plaintiff for $1,500 damages, and the defendant moved that the same be set aside and a new trial granted for the causes aforesaid.

*Christie & Kingman,* with whom was *Parsons,* for the defendant.

I.  The plaintiff alleges, in the first count, that in conse-quence of the " mere neglect, default and unskilfulness of the defendant, the ankle and foot of the plaintiff became greatly inflamed, swollen and festering for eighteen months, and finally became stiff, set, immoveable and fixed in an unnatural position." And in the next count says nothing of the remote consequence resulting from the surgical treat-ment, but alleges that " through the mere carelessness, neg-ligence and unskilfulness of the defendant, the ankle and foot of the plaintiff became greatly inflamed, virulent, cor-rupt and festering, and a mass of gathering putrid sores, and remained so from thence hitherto."

In both counts, the direct and immediate injury com-plained of is the setting, festering, inflammation and sores, and the position of the foot is alleged to be the consequence of this inflammation and these sores, after eighteen months' duration.

The injury complained of the plaintiff failed to prove. On the other hand, every medical witness introduced, both for the plaintiff and defendant, testified distinctly that the swelling, festering, inflammation and sores were a neces-

sary and unavoidable consequence of the severe injury and fracture the plaintiff had received, and would accompany the best possible surgical and medical treatment.

The plaintiff, then, abandoned this ground of action, and attempted to prove that the foot was not placed and kept in a proper position, while under the defendant's care as surgeon. This he should not have been permitted to do. 1 Saund. Pl. & Ev. 344, Tit. Variance ; *Hulman* v. *Bennett*, 5 Esp. 226.

" The cause and manner of committing the injury must be substantially proved as laid."

The case finds that the defendant attended on the plaintiff, as surgeon, four months and twelve days, and the only allegation in the declaration, in regard to the position of the foot and ankle is, that after eighteen months, in consequence of the swelling, &c., the foot became fixed in an unnatural position.

The allegation is not sustained by the proof; there is a fatal variance, and the plaintiff must be nonsuited. 2 Stark. Ev. 1584, Art. Variance.

" Where a wrongful act and an injurious consequence are alleged, the consequence must be shown to result immediately from the act ; it is not sufficient to connect the act with a remote consequence by evidence of intermediate causes."

II. The defendant is charged with unskilfulness. The plaintiff introduced witnesses to show that the best medical and surgical books directed and prescribed a certain course of treatment, different from, that pursued by the defendant in this case ; and then urged that the defendant was unacquainted with the practice of surgery, as laid down in the books of his profession, and, consequently, ignorant and unskilful.

To rebut this and the like evidence, the defendant offered to prove " that he had received scientific tuition in surgery, and was a regularly educated and skilful surgeon and phy-

sician." And we contend that such evidence would have a material bearing on the question of unskilfulness. If the defendant could show that he had surgical knowledge, or had taken all the steps, and employed the best means to acquire it, he would certainly be less obnoxious to the charge of unskilfulness, than if he knew nothing of his profession. And it is one step in the defence to the charge of unskilfulness, to show that the defendant was well qualified to treat such cases. At any rate, it was a good and legitimate answer to the evidence introduced by the plaintiff.

III. The evidence to sustain . Mrs. Jones should have been received. The plaintiff attempted to discredit her, by showing that her story was a recent fabrication, and the . defendant should be allowed to answer such attempts in the manner proposed.

*Wiggins & Wells*, with whom was *Peavey*, for the plaintiff.

I. The declaration is sufficient to maintain the suit for the defendant's neglect to place and keep the plaintiff's foot in a right position, as well as upon the other grounds stated. It formally, distinctly and fully sets out this ground of damage, and it would be difficult to make it more direct and distinct in the particular to which exception has been taken.

It is of no consequence *when* the ankle became stiff and fixed in a wrong position, if, as it is alleged in the declaration, that fixedness and stiffness in that wrong position was the result of, or caused by the negligence, carelessness and want of skill in the treatment of the limb, and the jury, under the instruction of the court, must have found that fact before they could have agreed upon their verdict. But in the case at bar, it appears from the record that the stiffness, &c., happened *before* the bringing of the suit, and that fact, taken in connection with the distinct allegation in the declaration, that it was occasioned by the defendant's malpractice, is suffi-

cient. *Ware* v. *Gay*, 11 Pick. 106; 2 N. H. Rep. 160; 2 Pick. 214; 17 Johns. 92.

II. The testimony of the husband of Mrs. Jones, the witness, was properly rejected by the court. 1 Stark. Ev. 148; Bull. N. P. 294; 1 Phill. Ev. 307, 308; 2 Steph. N. P. 1787. There are some slight exceptions to and modifications of this rule, but the case at bar does not come within either.

III. The evidence offered by the defendant, that he had received a good medical education, &c., was inadmissible, and was properly excluded. *Mertz* v. *Detweiler*, 8 S. & R. 376, is a case directly in point. In this case, the defendant called a physician, and proposed to prove by him that he knew the defendant, that he had practised with him as a surgeon, and knew his skill and character as a surgeon. The defendant also offered evidence in regard to his knowledge of surgery, anatomy, qualification, &c. The evidence was rejected by the court, when the learned judge who gave the opinion said, the testimony of the defendant's general skill, &c., was clearly irrelevant; it was not that, but his treatment of the particular case with which the jury had to do. If the latter was notoriously bad, of what account would be his abstract science or treatment of other cases. It may be said that his general qualifications might seem to shed light on the propriety of his practice, in this particular instance, but it is light which would be less likely to lead to a sound conclusion than to lead astray.

The jury, assisted by the opinions of medical witnesses, would be better able to judge of the treatment from the treatment itself, than from the more remote consideration of the defendant's professional reputation, which was, consequently, not the best evidence of which the case was susceptible. 1 Saund. Pl. & Ev. 104; 3 Burr. 1918; 9 Bing. 333; 5 B. & A. 840.

BELL, J. The first question raised by this case relates

to the admissibility of the evidence offered by the defendant, that he had received a good medical and surgical education, and was a regularly educated and skilful surgeon and physician. At the first look, it would not seem that the decision of this question could involve the discussion of the principles upon which the action is maintained. But as our conclusion upon this incidental question rests upon those principles, we propose to state them at such length as clearly to show the points upon which we rest our decision. These principles are of great consequence to all the classes of professional men, who are employed by others to transact business requiring especial skill and knowledge. The duties and responsibilities of all these classes, as those of lawyers and physicians, engineers, machinists, shipmasters, builders, brokers, &c., are governed by the same general rules. 1 Banv. Inst. 403. These rules it is important should be settled and well understood, since there are times when the verdicts of juries tend to release professional men from even a reasonable responsibility, as there are others when they seem to hold every man who offers his services in any of the professions, to an over-rigid accountability, and to make him little less than a warrantor or insurer of the success of every business in which he engages. At the present moment, it is to be feared, there is a tendency to impose some perilous obligations, beyond the requirements of the law, upon some classes of professional men.

What, then, is the contract of the professional man with his employer, in regard to his qualifications and his conduct? Or, since this contract is one implied by the law, what are the duties and obligations of the professional man, recognized by the law in these respects?

And here it may be laid down broadly, that without a special contract for that purpose, he is never a warrantor nor insurer. *Hancke* v. *Hooper*, 7 C. & P. 81. He never stipulates for success at all events, and he is never to be tried by the event.

By a special contract for that purpose, he may bind himself not merely to the exercise of skill, care and diligence, but to be responsible for results. He may undertake to do certain things, as, for example, a builder may agree to build a house or a ship of a certain description, and he then cannot excuse himself on the ground of his want of sufficient skill. In that case, the maxim of the civil law applies, *spondet peritiam artis.* So a surgeon may contract for the removal of a limb, the physician for the cure of a disease, or the lawer for the foreclosure of a mortgage, and by such a contract he becomes a guarantor of the result. He must be understood to have engaged to use a degree of diligence, and attention and skill adequate to the performance of his undertaking. It is his own fault, if he undertakes without sufficient skill, or applies less than the occasion requires. In that case *imperitia culpae adnumeratur.* It is in these cases alone, either of express contract to do certain work, or to accomplish certain results, or where such contract is necessarily implied, that the rule of the civil law, quoted as above by the elementary writers, has any application here. Story on Bail. 279; Chitty on Con. 165; 3 Black. Com. 122; 2 Greenl. Ev. 144; 1 Banv. Inst. 403.

By our law, a person who offers his services to the community generally, or to any individual, for employment in any professional capacity as a person of skill, contracts with his employer,

I. That he possesses that reasonable degree of learning, skill and experience which is ordinarily possessed by the professors of the same art or science, and which is ordinarily regarded by the community, and by those conversant with that employment, as necessary and sufficient to qualify him to engage in such business. In the language of *Story,* J., (Bailments 433,) " in all these cases, where skill is required, it is to be understood that it means ordinary skill in the business or employment which the bailee undertakes for. For he is not presumed to engage for extraordinary skill,

which belongs to a few men only, in his business or employ-
ment, or for extraordinary endowments or acquirements.
Reasonable skill constitutes the measure of the engagement,
in regard to the thing undertaken." Or, as it is said by
*Tindall*, C. J., (*Lanphier* v. *Phipos*, 8 C. & P. 475,) " every
person who enters into a learned profession, undertakes to
bring to the exercise of it a reasonable degree of care and
skill. He does not undertake, if he is an attorney, that
you will, at all events, gain your cause; nor does a surgeon
undertake that he will perform a cure, nor does he under-
take to use the highest possible degree of skill. There may
be persons who have higher education and greater advan-
tages than he has, but he undertakes to bring a reasonable,
fair and competent degree of skill."

This principle of the common law, as to the engagement
of the professional man, for a reasonable degree of skill and
no more, has been settled in the case of attorneys, in *Pitt* v.
*Yadden*, 4 Burr. 2060; *Laidler* v. *Elliot*, 3 B. & C. 738; *S.
C. 5 D. & R.* 635; *Russell* v. *Palmer*, 2 Wils. 325; *Hunter*
v. *Caldwell*, 16 L. Jour. 2 B. 274; *S. C.* 11 Jur. 770, and
10 2 B. 69; *Purves* v. *Landall*, 12 C. & Fin. 91; *Varnum*
v. *Mustin*, 15 Pick. 440; *Stimpson* v. *Sprague*, 6 Greenl.
470; *Crooker* v. *Hutchinson*, 1 Vt. Rep. 73; *Holmes* v. *Peck*,
1 R. I. Rep. 242; *Wilson* v. *Russ*, 7 Shep. 424; 1 Leigh's
N. P. 196; 2 Greenl. Ev. 120; 1 Saund. P. & E. 163;
Chitty on Con. 165.

In the case of physicians and surgeons, in *Seare* v. *Pren-
tiss*, 8 East 347; *Slater* v. *Baker*, 2 Wils. 359; *Moore* v.
*Morgue*, Cowp. 497; *Hancke* v. *Hooper*, 7 C. & P. 81;
*Lanphier* v. *Phipos*, 8 C. & P. 475; *Grannis* v. *Brandon*, 5
Day. 260; *Landon* v. *Humphry*, 9 Conn. Rep. 209; *Howard*
v. *Graves*, 15 Shep. 97; *Gallaher* v. *Thompson*, Wright
466; *Mertz* v. *Detweiler*, 8 W. & S. 376; 1 Saund. P. &
E. 91; 1 W.ms. Saund. 312, note 2; 1 Banv. Ins. 403;
Bell's Com. 459; and as to other employments in *Pawtuary*
v. *Walton*, 1 Rolls. Ab. 92; Bull. N. P. 73; Story on Bail.

280; §. 429; Paley on Agency 78; *Philips* v. *Wood*, 1 N. & M. 434.

II. In the second place, the professional man contracts, that he will use reasonable· and ordinary care and diligence in the exertion of his skill and the application of his knowledge, to accomplish the purpose for which he is employed. He does not undertake for extraordinary care or extraordinary diligence, any more than he does for uncommon skill. The general rule is well settled, as in other cases of contracts supposed to be mutually beneficial to the parties, that the contractor for services to be performed for another, agrees to exert such care and diligence in his employment as men of common˙ care and common prudence usually exert in their own business of a similar kind. He agrees to be responsible for the want of such care and attention, and he stipulates in no event, without an express contract for that purpose, for any greater liability. See the cases before cited, and *Kilsley* v. *Williams*, 5 B. & A. 820; *Patterson* v. *Gandasaqui*, 15 East. 62; *Howard* v. *Graves*, 15 Shep. 97.

Many decisions deny the liability of professional men even to this extent, since they decide that the surgeon or the attorney shall not be held responsible except for *lata culpa* or *crassa negligentia*, manifest fault or gross negligence. *Godefroy* v. *Dutton*, 6 Bing. 461; *S. C.* 4 M. & P. 149; *Purvis* v. *Landell*, 12 C. &. F. 91; *Wilson* v. *Russ*, 7 Shep. · 424; 1 Leigh's N. P. 196.

Perhaps nothing more is designed to be expressed in these cases than that the defendant is only liable for the want of ordinary care.

Upon this point it might be made a question, whether a medical man is not bound to apply extraordinary care, because his charge relates to the lives and health of his patients, which are to them of unequalled importance and interest. But there is no pretence that the physician is bound by any other rule in this respect, than that which governs all

classes of men employed in works or services requiring skill; the rule of ordinary care and diligence. There is, of course, a difference in different cases, as to what constitutes ordinary care, dependent upon the importance and delicacy or difficulty of the thing to be done. " Different things," says *Story*, (Bailments, § 429,) borrowing a very ancient illustration, " may require very different care. The care required in building a common doorway is quite different from that required in raising a marble pillar; but both come under the description of ordinary care." Such differences must exist among the cases requiring medical attention. But the common rule still applies, which requires such care and diligence as men in general, of common prudence and ordinary attention, usually apply in similar cases, and not that extraordinary care which might be applied in such a case by very careful and prudent persons.

III. In stipulating to exert his skill, and apply his diligence and care, the medical and other professional men contract to use their best judgment. Few cases can be supposed where but a single course of measures alone can be adopted, and many must occur, where great differences of opinion may exist as to the best course to be taken. In most cases judgment and discretion are required to be exercised. Freedom from errors of judgment is never contracted for by the attorney or the physician.

Ordinary good judgment is necessarily implied in the possession of ordinary skill, and if such share of judgment is fairly exercised, any risk from mere errors and mistakes is upon the employer alone. He, too, has judgment to exercise in the selection of the physician or the lawyer whom he will employ; and if he makes a bad selection, if he fails to choose a man of the best judgment, the result is fairly to be attributed to his own mistake, and is not to be visited upon the man who has honestly done his best endeavor in his service.

It is in accordance with these views that it has been often

decided, that a professional man is not responsible for errors of judgment, for mere mistakes, in cases of reasonable doubt and uncertainty. *Kemp* v. *Burt*, 1 N. & M. 262; *S. C.* 4 B. & A. 424; *Shilcock* v. *Passman*, 7 C. & P. 289; *Laidler* v. *Elliot*, 3 B. & C. 738; *S. C.* 5 D. & R. 635; *Montrion* v. *Jefferys*, 2 C. &. P. 113; *S. C.* R. & M. 317; *Godefroy* v. *Dalton*, 6 Bing. 461; *S. C.* 4 M. & P. 149; *Baikee* v. *Chadless*, 3 Camp. 17; *Pitt* v. *Yaldin*, 4 Burr. 2060; *Reece* v. *Rigby*, 4 B. & A. 202; 1 Saund. P. &. E. 63; Chitt. Con. 165.

They should be charged with the consequences of mere errors, only where such errors could not have arisen, except from want of reasonable skill or diligence. *Hart* v. *Frome*, 3 Jur. 547; *S. C.* 1 Rob. 595; 1 and C. & F. 193.

The cases cited relate principally to attorneys, but, as has been remarked, the principles of the law on this subject apply equally to all classes of professional men. And the observations of Lord Mansfield, in *Pitt* v. *Yaldin*, 4 Burr. 2060, apply with equal force to the cases of medical men. " Attorneys, who conduct themselves with honor and integrity, ought to be protected, when they act to the best of their skill and knowledge. Every man is liable to error, and I should be very sorry that it should be taken for granted that an attorney is answerable for every error or mistake, and to be punished for it by being charged with the debt which he was employed to recover. A counsel may mistake as well as an attorney; yet no one would say that a counsel who had been mistaken shall be charged with the debt."

In *Percy* v. *Millandon*, 20 Mart. R. 75, *Porter*, J. remarks: " It has been said that it will not be sufficient for a professional man to say, he acted to the best of his ability, because he should have formed a more just estimate of his own capacity before he engaged himself. This doctrine, if sound, would make an attorney responsible for every error of judgment, no matter what care or attention he exercised in forming his opinion. It would make him liable in all.

doubtful cases, where the wisdom or legality of one or more alternatives was presented for his consideration, no matter how difficult the subject was. But when a person who is appointed an attorney has the qualifications necessary for the discharge of the ordinary duties of the trust imposed, we are of opinion that on the occurrence of difficulties in the exercise of it, which offer only a choice of measures, the adoption of a course from which loss ensues, cannot make the agent responsible, if the error was one into which a prudent man might have fallen. The contrary doctrine seems to suppose the possession, and require the exercise of perfect wisdom in fallible beings. No man would undertake to render a service to another on such severe conditions."

The uncertainty of the law is almost proverbial. Probably that of the medical profession is not less. Many sects among them entertain different and almost irreconcileable theories as to the nature and mode of treatment of disease. Among all these it seems to be conceded that the characters and symptoms of disease vary in persons of different ages, sexes, and habits of life, and of different natural or acquired constitution ; and that the treatment of diseases, and that of wounds and fractures, must be more or less varied with the changes of climate and seasons, and with the peculiarities of persons and places. And that cases of sickness and accident, apparently similar, may yet be rendered substantially different by seemingly slight circumstances, easily overlooked, and sometimes difficult of detection. If this is so, the doubts and uncertainties which surround the medical and surgical practitioner, and the errors and mistakes to which he is unavoidably exposed, may well furnish a satisfactory explanation of unfavorable results, where a jury are satisfied of the reasonable skill, diligence, attention and care exhibited in the treatment.

To charge a physician or surgeon with damages, on the ground of unskilful or negligent treatment of his patient's case, it is never enough to show that he has not treated his

patient in that mode, nor used those measures, which in the opinion of others, even medical men, the case required ; because such evidence tends to prove errors of judgment, for which the defendant is not responsible, as much as the want of reasonable care and skill, for which he may be responsible. Alone, it is not evidence of the latter, and therefore the party must go further, and prove by other evidence that the defendant assumed the character, and undertook to act as a physician, without the education, knowledge and skill which entitled him to act in that capacity ; that is, he must show that he had not reasonable and ordinary skill ; or he is bound to prove, in the same way, that having such knowledge and skill, he neglected to apply them with such care and diligence as in his judgment, properly exercised, the case must have appeared to require ; in other words, that he neglected the proper treatment from inattention and carelessness. The evidence in support of these two views must naturally be of a very different character.

In the present case, the declaration is entirely ambiguous, as to which of these positions the plaintiff's counsel would adopt or choose to insist upon. The declaration alleges that the injury occurred because the defendant so negligently, carelessly and unskilfully behaved himself in and about the treatment, &c., that for want of skill, and the proper application of splints, &c., by and through the mere neglect, default and unskilfulness of the defendant, the plaintiff was injured.

It is, from this statement, uncertain whether it is to be insisted that the defendant was ignorant, and knew nothing of the proper surgical treatment of such an accident as the plaintiff had suffered ; or that being properly educated and competently learned in his profession, he had acted from negligence and carelessness, contrary to what must have been his better knowledge and judgment, if he had given proper attention to the case. Nothing in the declaration confined him to either of these views ; and nothing had oc-

curred in the course of the trial to restrict the plaintiff to the point of negligence. He was therefore at liberty to take his position before the jury, that the defendant was ignorant and unskilful, or that he was negligent and careless, or if he so pleased, that he was both unskilful and negligent. Any evidence, then, calculated to repel the inference of ignorance and unskilfulness, to show that he was a man of suitable education and acquirements for the safe practice of *his* profession, must surely be competent and proper. Such evidence must change the whole position of the case before the jury, because if the jury were satisfied he had proper knowledge and skill, the only question must then be whether he had adopted the course of his treatment from mistake, mere error of judgment, or from negligence and want of ordinary care. This, it is obvious, presents a very different state of the question from that where the points of *ignorance, negligence* and error are to be considered. As the evidence in question seems to us both pertinent and material, as tending to show ordinary knowledge and skill, we are satisfied it should have been received, and for this cause the case must be sent back for a new trial.

We have examined the declaration, and it seems to us sufficient.

The evidence of the statements of the witness, made out of court, seem to have been properly rejected.

*New trial granted.*