Hillsborough,
Nov. 5, 1952. ⎱ No. 4142.

ALPHONSE PARADIS

*v.*

LULU G. BANCROFT.

*J. Russell Widener* for the plaintiff.

*Karl E. Dowd* for the defendant.

GOODNOW, J. The first question raised by the defendant's exceptions concerns the finding and ruling of the Trial Court that in the absence of a special contract as to the nature of the title to be conveyed, the plaintiff is entitled to a marketable title. The defendant claims that the only agreement she made was to convey the title she had. There is no evidence of conversations between the parties as to what sort of title was to be conveyed other than the testimony of one witness that the defendant said "she would furnish a deed" and the receipt given for the down payment refers only to the "transfer of deed." The Trial Court correctly found an absence of special contract as to the nature of the title to be conveyed. Whenever the form of deed in which the conveyance is to be made under an executory contract for the sale of land has not been stipulated, it is well settled that there is an implied obligation on the part of the vendor to tender a good or marketable title. *Little* v. *Paddleford*, 13 N. H. 167, 174; anno. 57 A. L. R. 1253, 1256. The defendant was required to furnish the plaintiff with a good and marketable title under her agreement with him.

The other question raised by the defendant's exceptions concerns her claim that even if she was required to furnish a good and marketable title, her title to the real estate in this state trans-

ferred by warranty deed and supported by administration proceedings in another state but not by any record in this state was such a title.

The word "good" has normally been used in this state to denote the type of title to be furnished in such cases. *Little* v. *Paddleford, supra; Critchett* v. *Cooper,* 65 N. H. 167, 168. The terms "good" and "marketable" are generally regarded as synonymous in indicating the character of the title. 57 A. L. R. *supra,* 1283. These terms have many definitions but in general they mean that a title is free from reasonable doubt in law or in fact; not merely a title valid in fact but one which can be readily sold to a reasonably prudent purchaser or mortgaged to a person of reasonable prudence. 66 C. J. 862. Such a title must be free from any reasonable objection of a reasonable purchaser. 57 A. L. R. *supra,* 1285.

The defendant in this case testified that she was the daughter and sole heir of the last record owner of the premises in question who died in 1925 and that the record of the estate of that last record owner appeared in the appropriate court in the county of her domicile in another state. She produced at the hearing only a certificate evidencing her appointment as administratrix of the estate. It is the position of the defendant that the failure to take out ancillary administration on that estate in New Hampshire does not raise any reasonable objection to her title since the record of the estate is available in another state. The plaintiff on the other hand contends that the absence of a record in this state showing title in the defendant does raise a reasonable doubt and thereby makes the title unmarketable.

Assuming that the records without this state would establish the necessary facts to make this title marketable, it is our opinion that a title is not marketable which requires examination of matters of record outside of this state when action could be taken in this state to make the title marketable as a matter of record. See R. L., c. 358, s. 12. In this particular case, the records are said to be in an adjoining state and therefore not unreasonably difficult of access but a rule other than the one adopted herein could well require unreasonable and expensive efforts outside this state in the establishment of titles and the determination of their marketability.

The title tendered by the defendant cannot be made marketable by a finding in this case, based on her testimony, that the last record owner is deceased and that the defendant is her daughter

480

and sole heir. Such a finding would not bind other persons who might have an interest in the property who are not parties to this action. If the defendant is not the daughter, this state could be interested in legacy and succession taxes upon ancillary proceedings. If she is not the sole heir, there could be others interested in the ownership of this property. While it is sometimes true that parol or extrinsic evidence has been resorted to to explain and thus cure defects in record titles, such evidence has been used to prove facts which, by their nature, are not capable of recording but not to explain defects which could otherwise be cured of record. *Morse v. Stober*, 233 Mass. 223. In this case, the defect complained of could have been cured by ancillary administration proceedings in this state or by sale under license. R. L., c. 358, s. 12. The plaintiff in agreeing to purchase a good title did not agree to trust to the defendant's covenants of warranty. *Critchett* v. *Cooper, supra.* He did not agree to take her word that the record owner had died, that the defendant was the daughter of that owner and her sole heir. He agreed to purchase such a title as was free of reasonable objection.

The title tendered by the defendant was not free of reasonable objection. It follows that the plaintiff was entitled to rescind his agreement and to recover the advanced payment.

*Exceptions overruled.*

All concurred.