Carroll
No. 85-524

## Steven D. Morrill

v.

## Robert W. Tilney, M.D.

December 5, 1986

774

*Cooper, Fauver & Deans P.A.*, of North Conway (*Randall F. Cooper* on the brief and orally), for the plaintiff.

*Sulloway, Hollis & Soden,* of Concord (*Michael P. Lehman* and *Stephen E. Woodbury* on the brief, and *Mr. Lehman* orally), for the defendant.

JOHNSON, J.   This is an appeal from a jury verdict for the plaintiff and the denial by the Trial Court (*Goode*, J.) of the defendant's motions for nonsuit, directed verdict, and judgment notwithstanding the verdict or new trial. The defendant contends that the trial court erred in denying these motions because no reasonable person could have believed the plaintiff's evidence at trial, and because the alleged malpractice was merely a mistake in professional judgment. We reject these contentions, and affirm the rulings of the trial court.

On October 11, 1981, the plaintiff, a self-employed logger, injured the tip of his left middle finger while sawing wood on a radial arm power saw. He immediately sought treatment by the defendant, Dr. Robert Tilney, M.D., at the emergency room of Memorial Hospital in North Conway. Dr Tilney is a board certified general surgeon.

X-rays revealed that the injury involved the last, or distal interphalangeal joint, on the radial side of the finger. In view of the apparent severity of the wound, the plaintiff, who was anxious to return to work as quickly as possible, requested that Dr. Tilney simply amputate the damaged portion of the finger. Instead, Dr. Tilney, believing that there was a reasonable chance the finger could be saved, persuaded the plaintiff to undergo a more complex procedure in an effort to reconstruct the finger. Dr. Tilney believed that he had an ethical duty to his patient, who was in "a lot of pain," to explain the procedure that could possibly save the finger. The plaintiff agreed to undergo the reconstruction surgical procedures explained by the defendant.

The wound itself measured four by four centimeters. Within the site of the injury, all skin was destroyed, between thirty and fifty percent of the bone was missing, as well as between thirty and fifty percent of the joint surface itself. There remained a functioning artery and a partially functioning nerve to the tip. The entire finger was alive.

Rejecting more conservative alternatives, Dr. Tilney elected to attempt cosmetic reconstruction while preserving mobility of the finger. Using a local anesthetic, Dr. Tilney sewed the severed tendons of the finger back together with a running suture. This was accomplished by drilling a hole through the bone and placing a suture through, pinning it on the top of the finger with an ordinary shirt button. Dr. Tilney then "closed" the wound by using a full-thickness skin graft. The finger was then splinted and wrapped in a sterile dressing.

The plaintiff returned for office visits on October 12, 15, 22, and 26, and November 9 and 23. On October 22, two weeks after the surgery, the splint was removed. The plaintiff eventually regained

function in the bottom two joints of the finger, but never regained function in the repaired joint.

In mid-February, 1982, the plaintiff first noticed that the tip of the finger had begun to deviate toward the thumb. He discussed this development with Dr. Tilney in an office visit on March 8. Believing that the deviation was the result of contraction of the skin graft, Dr. Tilney prescribed skin cream as a remedial measure. The plaintiff returned on May 13 with a greater deviation of the fingertip, and at that time it became clear to Dr. Tilney that his procedure had failed and that amputation was necessary.

The plaintiff brought a malpractice suit in superior court, alleging that Dr. Tilney negligently failed to recognize the significance of the bone injury in his finger, and negligently chose a course of treatment which could not but have resulted in the deformity that in fact occurred.

At trial, each side's expert witness agreed that at the time of the injury, the control of infection was the chief concern. The experts disagreed, however, as to the appropriate medical course of treatment under the circumstances. Based upon the X-rays, emergency room documents and a personal examination of the patient, Dr. Walter Garger, M.D., an orthopedic surgeon, testified for the plaintiff that the bone loss was so great that the procedure employed by the defendant was doomed from the outset, and that the finger should have been amputated, thus saving the plaintiff much pain, lost wages and mental anguish. The defendant's expert, Dr. H. James Forbes, a hand specialist, disagreed. While Dr. Forbes never personally examined the patient, he testified that the procedure employed by the defendant was appropriate under the circumstances, and that his work represented "the finest and best and most appropriate level of care." When asked whether he had "seen or observed or been where a doctor has made a mistake," Dr. Forbes responded that he could not "think of anything that just pops right out as being a mistake."

The defendant moved for a nonsuit at the close of the plaintiff's case. This motion was denied by the trial court. At the close of all the evidence, the defendant moved for a directed verdict. After the denial of this motion, the defendant filed a request for specific jury instructions on the issue of professional judgment. The court did not adopt the defendant's proposed charge specifically, but addressed the question of professional judgment in the context of modern statutory and case law dealing with malpractice.

The case was submitted to the jury. After approximately two and one-half days of deliberation, the jury remained deadlocked at 11–1. The parties then agreed to accept the unanimous verdict of 11

members of the jury, which resulted in a verdict for the plaintiff in the amount of $28,000. Along with a motion to reduce damages, the defendant filed a motion for judgment notwithstanding the verdict or new trial. The trial court denied both motions. The defendant has withdrawn from his appeal the issue of the reduction of damages motion, and appeals only the denial of his motions for nonsuit, directed verdict, and judgment notwithstanding the verdict or new trial.

In ruling on a motion for nonsuit, the question before the trial court is whether the plaintiff has introduced sufficient evidence to make out a prima facie case. R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1579, at 294 (1984). Such evidence must be "sufficient as a matter of law to sustain a verdict in [the plaintiff's] favor," *id.* § 1591, at 302, and is to be construed in the light most favorable to the party seeking relief. *Bonin v. Howard*, 115 N.H. 86, 88, 333 A.2d 450, 451 (1975). In this case, the plaintiff's evidence included Dr. Garger's expert medical opinion that the deviation of the fingertip was the inevitable consequence of the defendant's failure to surmise the degree of bone loss, and his decision to attempt cosmetic reconstruction while preserving mobility. Dr. Garger had himself examined the patient. He is a board certified orthopedic surgeon, and there was no question as to his qualifications as an expert. The plaintiff himself testified extensively as to the amount of income he lost, allegedly as a result of the defendant's treatment of his injury. Under these circumstances, "[v]iewing the evidence in a light most favorable to the plaintiff, as a court is required to do on a motion for nonsuit," *id.*, we find no error in the denial of the motion for nonsuit.

It is proper to grant a motion for directed verdict only if, considering all of the evidence in a way most favorable to the opponent, no reasonable person could conclude that the moving party's opponent was entitled to any relief. WIEBUSCH, *supra* § 1585, at 297. The test is whether "all of the evidence . . . so overwhelmingly favors the moving party that no contrary verdict based upon that evidence could ever stand." *Stock v. Byers*, 120 N.H. 844, 848, 424 A.2d 1122, 1125 (1980) (quoting *Amabello v. Colonial Motors*, 117 N.H. 556, 561, 374 A.2d 1182, 1185 (1977)). We think that the evidence in this case, when viewed in a light most favorable to the plaintiff, does not overwhelmingly favor the defendant, and that a reasonable juror "might . . . conclude that the allegation of negligence is sustained." *Brann v. Exeter Clinic*, 127 N.H. 155, 158, 498 A.2d 334, 336 (1985) (quoting *Paine v. Railway*, 58 N.H. 611, 614 (1879)). The trial court was faced with a plaintiff who had supported his case with expert

testimony. This testimony was offset by the defendant's own testimony, and that of his own expert, Dr. Forbes. The jury was free to accept or reject this testimony, in whole or in part. *Gowen v. Brothers*, 121 N.H. 377, 380, 430 A.2d 159, 161 (1981). Under such circumstances, "[t]he evidence . . . could support a jury verdict in [the plaintiff's] favor," and the issue must go to the jury. *Welch v. Fitzgerald-Hicks Dodge Inc.*, 121 N.H. 358, 361, 430 A.2d 144, 146 (1981).

▮▮ Further, it is well established that a motion for directed verdict must be denied if the evidence is conflicting on a material issue. *Merchants Mutual Casualty Co. v. Smith*, 91 N.H. 204, 206, 17 A.2d 88, 90 (1940). In this case, the plaintiff's expert testified that due to the amount of bone loss in connection with the plaintiff's injury, the defendant should have elected to either amputate the finger or fuse the joint. The defendant's expert, however, testified that Dr. Tilney's course of treatment was correct, and represented "the finest and best and most appropriate level of care." Under these circumstances, the trial court had no choice but to send the case to the jury, and we find that the defendant's motion for directed verdict was properly denied.

▮ We do not agree with the defendant that the testimony of the plaintiff's expert was so inconsistent with the plaintiff's own theory and the evidence at trial that no reasonable juror could have believed it. It is well settled that the jury has substantial latitude in determining the credibility of witnesses. *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 350, 415 A.2d 671, 674 (1980). It is the jury which "observes the witnesses, judges their credibility and hears their testimony, accepting or rejecting it in whole or in part." *Gowen, supra* at 380, 430 A.2d at 161. In determining witness credibility, the jury may accept some parts and reject other parts of testimony, and adopt one or the other of inconsistent statements by witnesses. *Herbert v. Railroad*, 90 N.H. 324, 332, 8 A.2d 744, 748 (1939). The defendant's argument that the case should have been taken from the jury because of alleged inconsistency in a given witness' testimony is without merit.

▮ We also reject the defendant's claim that his motion for judgment notwithstanding the verdict or for a new trial should have been granted. Such a motion may be granted when the evidence supporting the verdict is so slight or unreliable that no reasonable person could come to the conclusion reached. *Perreault v. Lyons*, 98 N.H. 317, 318, 99 A.2d 916, 917 (1953). In this case, we do not think the evidence was so slight or unreliable as to be unbelievable by a reasonable person. The fact that the evidence presented was con-

flicting does not justify setting aside a jury verdict based thereon. "The evaluation of conflicting evidence and credibility lies with the jury, and the trial court is not permitted to usurp this function." *Moore v. Aksten*, 123 N.H. 220, 222, 459 A.2d 266, 268 (1983). Indeed, where there is conflicting evidence, a motion to set aside will be denied unless the evidence is "so preponderantly in favor of the losing party as to disclose mistake, partiality or corruption on the part of the triers of fact." *Wisutskie v. Malouin*, 88 N.H. 242, 243, 186 A. 769, 770 (1936); *see also Milford Etc. Company v. Railroad*, 79 N.H. 525, 107 A. 313 (1919) (jury appeared not to have deliberated at all); *Doody v. Railroad*, 77 N.H. 161, 89 A. 487 (1914) (jury appeared to have ignored the judge's instruction). This is not a case where the jury "unwittingly fell into a plain mistake," *Bennett v. Larose*, 82 N.H. 443, 447, 136 A. 254, 256 (1926), nor was it apparent that "the verdict was produced by passion, partiality or corruption," *Marshall v. Morin*, 79 N.H. 351, 352, 109 A. 80 (1920) (quoting *State v. Wren*, 77 N.H. 361, 367, 92 A. 170, 174 (1914)).

█ Further, this court has historically refused to reverse the denial of a motion for judgment notwithstanding the verdict in the absence of an abuse of discretion. *Moore, supra* at 222, 459 A.2d at 268. The defendant has not alleged an abuse of discretion in this case, and we hold that the trial court acted properly in denying the defendant's motion for judgment notwithstanding the verdict. This is not a case where the trial judge "acted witlessly in passing on the witlessness of the jury." *Bennett, supra* at 448, 136 A. at 257.

█ We do not separately consider the question of whether the testimony of the plaintiff's expert was without foundation. The issue of foundation goes to the admissibility of the evidence, *see Connell v. State Oil Co.*, 93 N.H. 244, 246, 40 A.2d 743, 744 (1944), and thus an objection based on foundation must be taken at the time the testimony is introduced. Because the defendant did not do so in this case, his claim is waived on appeal. *Standard & c. Ins. Co. v. Gore*, 99 N.H. 277, 283, 109 A.2d 566, 571 (1954).

We reject the defendant's argument that the case should have been taken from the jury because the alleged malpractice was really a question of professional judgment. While it is true that this court has recognized that a professional is not liable "for errors of judgment," *Leighton v. Sargent*, 27 N.H. 460, 473 (1853), we think that the modern standard of care for professional malpractice is more clearly reflected in RSA 508:13, which provides in relevant part that:

> "[i]n determining whether the person against whom a malpractice claim has been made has met the applicable

standard of care, the jury . . . shall consider only whether the person . . . has acted with due care having in mind the standards and recommended practices and procedures of his profession, and the training, experience and professed degree of skill of the average practitioner of such profession, and all other relevant circumstances."

We do not think this standard is inconsistent with that articulated in *Leighton*, in which this court noted that a plaintiff

"must . . . prove . . . that the defendant . . . undertook to act as a physician, without the education, knowledge and skill which entitled him to act in that capacity . . . or . . . that having such knowledge and skill, he neglected to apply them with such care and diligence as in his judgment, *properly exercised*, the case must have appeared to require; in other words, that he neglected the proper treatment from inattention and carelessness."

*Leighton, supra* at 475 (emphasis added).

In the case at bar, we think that, while not compelled to do so, a reasonable jury could find that the course of treatment undertaken by Dr. Tilney fell short of "the standards and recommended practices and procedures of his profession," and that he failed to apply the knowledge and skill which, *in the proper exercise of his judgment*, the case appeared to require. Certainly Dr. Garger so found, and testified at length to that effect. While his testimony was not uncontroverted, the jury was free to accept or reject the testimony of all the witnesses, in whole or in part. *93 Clearing House v. Khoury*, 120 N.H. 346, 415 A.2d 671 (1980). We hold that the trial court acted properly in denying the defendant's motion for nonsuit, directed verdict, and judgment notwithstanding the verdict or new trial. The verdict must stand.

In conclusion, we commend trial counsel and the parties for their mutual cooperation in facilitating the jury process by agreeing to accept the deadlocked 11–1 vote. Such practices help to assure the most efficient use of judicial resources by expediting the trial process, and are to be encouraged.

*Affirmed.*

All concurred.