Hillsborough
No. 91-252

BRUCE P. WITTE

v.

WILFRED J. DESMARAIS AND
WIGGIN & NOURIE

September 1, 1992

*Thomas A. Rappa, Jr.*, of Woodsville, by brief and orally, for the plaintiff.

*Merrill & Broderick*, of Manchester (*John T. Broderick, Jr.* and *Mark E. Howard* on the brief, and *Mr. Broderick* orally), for the defendants.

THAYER, J. This is a legal malpractice action. The plaintiff, Bruce P. Witte, appeals the Superior Court's (*Hampsey*, J.) decision granting the defendants' motion to dismiss his suit for failure to state a claim upon which relief may be based. The defendants are Wiggin & Nourie, a Manchester law firm, and Wilfred J. Desmarais, one of its partners. Witte makes several allegations of negligence, while the defendants argue, among other things, that Witte's claims of damages are too speculative to support a cause of action. We hold that, as to one of Witte's allegations, his claims of damages are not too speculative, and therefore reverse and remand for further proceedings.

Witte is no stranger to the State and federal courts; his domestic relations have been the fount from which much litigation has sprung. *See, e.g., Witte v. Justices of New Hampshire Superior Court*, 831 F.2d 362 (1st Cir. 1987); *Christy & Tessier v. Witte*, 126 N.H. 702, 495 A.2d 1291 (1985); *Witte v. Witte*, No. 83-184 (N.H.; June 2, 1983). This most recent foray alleges malpractice stemming from the defendants' handling of Witte's divorce ten years ago. In his writ, Witte alleges:

> "[T]he defendants were negligent in providing professional legal services to the plaintiff during their representation of him before the Hillsborough County Superior Court in the case of *Witte v. Witte*, #M-82-579. The defendants owed the plaintiff a duty of care and competent representation and breached that duty as further set out in the attached schedule A, said breach being the direct, legal and proximate cause of significant damage to the plaintiff, both monetarily and emotionally."

Schedule A sets forth several specific allegations of negligence; we will list them seriatim as we discuss the merits of Witte's appeal below.

■■ As a preliminary matter, we outline the well-established review standard: "On an appeal from an order granting a motion to dismiss, the only issue raised is whether the allegations are reasonably susceptible of a construction that would permit recovery." *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985) (quotation omitted). All of Witte's factual assertions must be presumed true and read in the light most favorable to him, *see Nutter v. Frisbie Mem. Hosp.*, 124 N.H. 791, 793, 474 A.2d 584, 585 (1984), and all reasonable inferences must be drawn to support Witte's position, *see Collectramatic supra.*

■ On a motion to dismiss, of course, the plaintiff's writ must be assessed in light of the law governing the tort or violation alleged—here, legal malpractice. In *North Bay Council, Inc. v. Bruckner*, 131 N.H. 538, 563 A.2d 428 (1989), we described this tort as follows:

> "The elements of liability in a legal malpractice action . . . require demonstration of a relationship, as of client and attorney, upon the latter of whom the law imposes a duty to exercise care, skill and knowledge in providing legal services to the client; a breach of that duty; and a connection of legally recognized causation between the breach and resulting harm to the client. The malpractice plaintiff's burden in proving liability is thus essentially the same as any negligence plaintiff's burden to prove facts upon which the law imposes a duty of care, breach of that duty, and so-called proximate causation of harm."

*Id.* at 542, 563 A.2d at 430 (citations omitted). Thus, in order to withstand a motion to dismiss, a legal malpractice plaintiff must adequately plead the three basic elements of negligence: duty, breach, and causation of damages. The first element, duty, is adequately pleaded by alleging an attorney-client relationship, *see Fairhaven Textile v. Sheehan, Phinney, et al.*, 695 F. Supp. 71, 73 (D.N.H. 1988), and does not appear to be a matter of dispute here.

We turn now to Witte's several allegations of malpractice and determine whether they do in fact state a claim upon which relief could be based. First, we address Witte's allegation in his brief that the defendants

> "intentionally [led] the plaintiff to believe he would be represented by a renowned partner of the firm, whose services the plaintiff expressly requested and paid to retain, only to

later inform the plaintiff, at a point in the case when it was impractical to retain new counsel, that the attorney would not be available to try the case after all."

Although Witte's brief insinuates that the defendants deliberately misled him and made him the victim of a "bait and switch," we must base our review of the trial court's order on Witte's pleadings below, not on his appellate arguments. *See Collectramatic*, 127 N.H. at 320, 499 A.2d at 1000. The writ itself states:

"2. Dr. Witte expressly retained the services of L. Jonathan Ross, Esquire of the defendant law firm, Wiggin & Nourie, to represent him in [his divorce] matter.

3. During the pre-trial phase of that litigation Dr. Witte was informed by agents of Wiggin & Nourie that the defendant, Wilfred J. Desmarais, Esquire, would be preparing the case for Mr. Ross, but that Mr. Ross would be available to actually present the case at trial.

4. Shortly before the matter was scheduled for a hearing on the merits, Dr. Witte was informed that Mr. Ross would not be available to try his case and that he was free to seek alternative, and possibly more economical, legal representation should he so choose.

5. At that late stage in the matter the plaintiff felt compelled to continue to retain the services of Wiggin & Nourie and was actually represented through the hearing on the merits by the defendant, Wilfred J. Desmarais, Esquire, of that firm."

According to the defendants, Jonathan Ross was unable to handle Witte's case due to illness.

Assuming, as we must, all the allegations above to be true, and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, we hold that, with regard to this claim, Witte has failed to plead one of the requisite elements of his cause of action: breach of the defendants' duty to competently and diligently represent him. His writ alleges neither deception nor misrepresentation and it makes no suggestion that the defendants intentionally or inadvertently withheld information about Ross' availability. Without some assertion of carelessness or deceit, the conduct described in the writ merely states an unfortunate chain of events, particularly as the defendants took pains to tell Witte of his option to seek other counsel. A law firm is not a guarantor of its attorneys' good health

and does not breach its duty simply by informing a client that the attorney he or she originally requested is no longer available. Consequently, the trial court properly granted the defendants' motion to dismiss with regard to this allegation. Whether the facts as alleged present a contract issue is not before us, and we make no decision in that regard.

Next, we address Witte's argument, as stated in his brief, that

"[Desmarais'] failure to disclose to his client the potential prejudice of the hearing officer scheduled to hear the plaintiff's case until the parties were literally walking into the hearing room, in spite of the fact that the hearing officer's identity was known to [Desmarais] well in advance of the hearing, breached the duty of professional representation owed the client."

This statement accurately summarizes Witte's argument and allegations as they appear in his writ. Witte's current attorney conceded during oral argument that the conduct claimed above does not, "in and of itself," constitute malpractice, but he argued that such conduct, when considered along with Desmarais' other alleged actions, evinces a callous disregard of the plaintiff's emotional state that is itself legal malpractice. We disagree.

■ Just as law firms are not guarantors of their attorneys' good physical health, lawyers are not guarantors of their clients' good emotional health. While Witte

"had the right to expect that [Desmarais'] representation of him be within the range of competence required of attorneys . . . , [i]t is clear . . . that the professional skills expected of an attorney are those arising out of legal training and experience, and do not include . . . the ability to diagnose the psychological state of a client . . . ."

*McLaughlin v. Sullivan*, 123 N.H. 335, 340, 461 A.2d 123, 126 (1983). We say this not to solicit anything but the most humane and compassionate behavior from attorneys, but simply to observe that lawyers are trained and hired to perform legal services, not psychological services. Though reprehensible, callous insensitivity does not alone constitute legal malpractice. We therefore hold that the trial court properly granted the defendants' motion to dismiss with regard to this allegation.

■ We turn to a third allegation, articulated as follows in Witte's brief:

"[Desmarais'] failure to procure formal court approval of his motion for a special marital master to preside over the final hearing in his client's divorce, thus subjecting the client to a hearing in which the presiding officer had no actual authority to hear the case, breached the duty of professional care owed the plaintiff."

As the defendants point out, even if their conduct as alleged above did constitute a breach of duty, Witte cannot prove the essential element of damages. RSA 519:9, governing the appointment of special masters, states that "[t]he superior court with the consent of the parties *shall* . . . commit to one or more referees any cause at law or in equity . . . ." (Emphasis added.) Witte concedes that Desmarais' motion for appointment of the special master was filed with the consent of opposing counsel; therefore, by the terms of RSA 519:9, the special master would have been appointed regardless of Desmarais' alleged negligence. In any event, the special master heard the case, as Witte requested. Because Witte's allegation fails to postulate any harm, we conclude that the trial court correctly granted the defendants' motion to dismiss it.

 Reciting a fourth allegation, Witte argues in his brief that

"[Desmarais'] failure to object to and rectify that the opposing party used a disputed asset to pay her attorney's retainer, in spite of the fact that there was an agreement between counsel that the asset would be held in escrow, breached the duty of professional care owed the plaintiff."

We do not address this argument because it was not raised in Witte's notice of appeal. *See* SUP. CT. R. 16(3)(b); *Wilder v. City of Keene*, 131 N.H. 599, 605, 557 A.2d 636, 640 (1989).

 Fifth, Witte's brief states:

"[Desmarais'] failure to properly introduce evidence at the final divorce hearing, which would have accurately reflected the plaintiff's financial condition, the exclusion of said evidence having the direct and proximate result of an alimony and support award which was grossly disproportionate to both economic reality and other decrees based on the same grounds at that time, breached the duty of professional care owed the client."

This contention also will not be considered here because it was not raised below and was not contained in Witte's writ. *See N.H. Munic.*

*Trust Workers' Comp. Fund v. Flynn, Comm'r,* 133 N.H. 17, 26, 573 A.2d 439, 444–45 (1990).

Witte's final allegation, as set forth in his writ, states:

"20. In preparing for the hearing Mr. Desmarais had instructed his client not to mention certain monetary assets [a $4,000 cashier's check] over which he had dominion and control.

21. During cross-examination of Dr. Witte, a recess was called during which Mr. Desmarais recanted his prior position and instructed his client to make those assets known to the master.

22. By subjecting his client to this embarrassment and thus arming opposing counsel with a new arsenal of weapons to unleash upon the witness, Mr. Desmarais directly undermined the credibility of his client before the Court.

. . . .

32. As a result of the above, the plaintiff suffered a loss of significant property, family rights, and career prospects."

Witte contends that this allegation adequately pleads all three elements of negligence and that, therefore, the trial court improperly granted the defendants' motion to dismiss. The defendants apparently do not contest that these allegations, if true (a fact they do not concede), establish a breach of an attorney's duty to a client. They do, however, disagree over the third element of negligence, causation of damages, and make several arguments in support of the trial court's order to dismiss.

First, the defendants maintain in their brief that Witte "makes no claim that the divorce decree and the property allocation would have been any different had he been advised to disclose the check in the first instance." In other words, the defendants argue that Witte's writ fails to allege causation of damages. We think this argument neglects the standard of review governing this case, which requires us to draw all reasonable inferences from the facts alleged in the writ and view them in the light most favorable to the plaintiff. *See Leeman v. Boylan,* 134 N.H. 230, 232, 590 A.2d 610, 611 (1991). Although the writ does not specifically state that Desmarais' advice caused Witte to receive a less favorable property distribution or support order, this is a reasonable inference to draw from the allegation that, "[a]s a result of the above, the plaintiff suffered a loss of significant property, family rights, and career prospects." Moreover, Witte

alleged in the main body of his writ that the defendants' breach of their duty was "the direct, legal and proximate cause of significant damage to the plaintiff, both monetarily and emotionally." A more particular claim of causation, tying a specific breach to a specific harm, would of course be more helpful to the defendants and the court, but it is not required to survive a motion to dismiss.

The defendants next assert that Witte's allegation concerning the $4,000 check fails because the marital master awarded the check to Witte free from any claim of his then wife. In their brief, the defendants argue that "[i]f, as the plaintiff claims, the master was negatively impressed with the plaintiff's credibility because of the $4,000 check, one would expect, at least, that the master would order that he relinquish the asset." The defendants' argument describes one possible scenario, in which the alleged breach caused no damages, but others are equally likely. For example, following the check incident, the court may have chosen not to believe Witte's unsupported testimonial assertions of a recently reduced income, and constructed the alimony award accordingly. Consequently, we cannot say as a matter of law that this allegation fails to assert causation of damages.

Third, the defendants maintain that the doctrine of *in pari delicto*, *i.e.*, in equal fault, prevents Witte from recovering for any damages caused by Desmarais' alleged advice concerning the check. If Desmarais advised Witte to commit perjury, the defendants argue, then Witte actually committed perjury when he took the advice and should not be permitted to benefit from his wrongdoing. *See Pantely v. Garris, Garris*, 180 Mich. App. 768, 775–79, 447 N.W.2d 864, 867–69 (1989); *Evans v. Cameron*, 121 Wis. 2d 421, 427, 360 N.W.2d 25, 30 (1985). Although this argument is persuasive, the pleadings do not clearly establish that Witte in fact committed perjury or intentionally misled the court. As it is not our role at this stage of the proceedings to resolve such factual issues, we must reject the defendants' *in pari delicto* contention.

Finally, the defendants argue in their brief that dismissal of Witte's claim was appropriate because otherwise a "jury would be left merely to speculate and guess on the issue of causation. It would be pure conjecture for the jury to determine what factors influenced the master's discretionary decision to divide the marital estate in the manner that he did." Witte counters that causation is simply a factual question for the jury or court.

■ This is an issue of first impression for us. The defendants correctly point out that basic tort law prohibits recovery "[w]here it cannot be shown with reasonable certainty that any damage resulted from the act complained of." 25 C.J.S. *Damages* § 27, at 683 (1966). At the same time, however, "the general doctrine of negligence law establishes causality as a fact issue for the jury except in those cases where reasonable [persons] cannot differ." *Ishmael v. Millington*, 50 Cal. Rptr. 592, 597 (Ct. App. 1966). Whether reasonable persons can differ over the issue of causality here—that is, whether the issue is too speculative to leave to a fact-finder—is the real question before us.

■ Before we can answer the question, an important distinction must be made between determining whether the defendants' alleged breach actually damaged Witte's case, and determining the *amount* of those damages, assuming they exist. The former question is more an issue of causality, while the latter is one of damage calculation. It is uncertain causality, not damage calculation, that properly provokes the speculation argument and requires our attention. One authority explains this distinction as follows:

> "The test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but rather the more basic question of whether there are identifiable damages. . . . Thus, damages are speculative only if the uncertainty concerns the fact of whether there are *any* damages rather than the amount."

1 R. MALLEN & J. SMITH, LEGAL MALPRACTICE § 16.3, at 894–95 (3d ed. 1989) (footnotes omitted). Further, this authority states:

> "In a legal malpractice action, a court may be tempted to characterize the plaintiff's damage claim as speculative because of the difficulty in liquidating the claim. This is because legal malpractice litigation often involves hypothetical questions which have real consequences. For example, how much did the client lose when the lawsuit was not prosecuted? Or, how much better off would the client have been had the suit been defended or been defended more competently?
>
> "No one can say precisely what the plaintiff lost or should have lost in such situations, but difficulty or imprecision in calculating damages does not exculpate the attorney. Even though damages cannot be calculated precisely, they can be

estimated. Otherwise, attorneys could avoid liability merely because damages are difficult to measure. The beneficiaries would tend to be those attorneys whose errors were the greatest and whose conduct succeeded in complicating the issue of calculating the extent of the client's injury."

*Id.*

■■ Where the question whether the breach caused any damages is judged not too speculative, the fact-finder is left to decide what should have happened in the original action. In other words, "the jury will substitute itself as a trier of fact and will determine the factual issues on the same evidence that should have been presented to the original trier of fact." *Fairhaven Textile*, 695 F. Supp. at 77; *see also Chocktoot v. Smith*, 280 Or. 567, 573, 571 P.2d 1255, 1258 (1977); Breslin & McMonigle, *Expert Testimony in Legal Malpractice Actions*, LITIGATION, Fall 1979, at 30, 33. This process then becomes in essence a trial within a trial. *See, e.g., Williams v. Bashman*, 457 F. Supp. 322, 326 (E.D. Pa. 1978); *Gautam v. De Luca*, 215 N.J. Super. 388, 397–99, 521 A.2d 1343, 1347 (1987) (eschewing a rigid approach to the "suit within a suit" requirement); *George v. Caton*, 93 N.M. 370, 378, 600 P.2d 822, 830 (1979). The *measure* of damages is a mechanical computation: the difference between what the fact-finder determines the plaintiff should have recovered and what the plaintiff actually recovered. *See* 1 R. MALLEN & J. SMITH, *supra* § 16.1, at 890.

Returning to the issue at hand, we must decide whether reasonable persons could not differ over the question of causation in Witte's case; that is, whether it is too speculative to presume that Desmarais' alleged breach injured Witte's credibility in the eyes of the marital master, thereby resulting in a less favorable property distribution and support order. We hold that it is not too speculative and that reasonable persons could differ over the question. As noted above, it is possible, and even likely, that a reasonable court would have been less inclined to believe Witte's unsupported assertions of reduced income after cross-examination revealed that he purposely omitted a $4,000 asset from his financial affidavit.

A review of the sparse caselaw on the subject suggests that our decision is in line with those of other jurisdictions. For example, one court held a question of causation too speculative for a jury where there was no conceivable link between the breach alleged and the damage claimed. In *Olson v. Aretz*, 346 N.W.2d 178 (Minn. Ct. App. 1984), the plaintiff, like Witte, sued his attorney for negligence in

handling a divorce. According to the plaintiff, the attorney's breach of duty caused a delay in the final hearing on the merits, which in turn caused the court to award his then wife a greater lien on the family residence than she would have received had the hearing been held earlier. The court held the logical leap between the delay and the amount of the lien too great: "Any attempt to determine how the various assets would have been divided at an earlier date is pure conjecture." *Id.* at 183. By contrast, here one can make a reasonable inference that Desmarais' alleged breach damaged Witte's credibility and made it less likely that the marital master would believe Witte's other assertions of low income and assets.

Similarly, in *Mariscotti v. Tinari*, 485 A.2d 56 (Pa. Super. 1984), the plaintiff claimed her divorce attorney incorrectly evaluated the worth of her then husband's assets. Had she known the real, allegedly higher, value of the assets, she charged, she would have been in a better negotiating position and would have reached a more advantageous settlement with him. The court said: "Her claim, it seems obvious, is based on pure speculation. Whether she could have obtained a better settlement is anyone's guess." *Id.* at 58. While it is impossible to predict what an opposing party will do or agree to in a settlement, it is possible for one fact-finder to determine what another reasonable fact-finder should have done in any given case. The later jury or court simply substitutes itself for the fact-finder in the earlier case. *See Fairhaven Textile*, 695 F. Supp. at 77. Thus, here a jury could determine what a reasonable marital master should have done in Witte's divorce case if all the evidence had been presented without the taint of Desmarais' alleged breach. *See Cornett v. Johnson*, 571 N.E.2d 572, 575 (Ind. Ct. App. 1991) (negligence charged in attorney's presentation of evidence in divorce trial; court held that award received by plaintiff should be compared with what "reasonable judge," knowing all facts, would have awarded).

■ For the foregoing reasons, we conclude that, as to Witte's allegation concerning the $4,000 cashier's check, Witte adequately pleaded all three elements of the tort of negligence. Because "the allegations [in the plaintiff's pleadings] are reasonably susceptible of a construction that would permit recovery," *Provencal v. Vermont Mut. Ins. Co.*, 132 N.H. 742, 744–45, 571 A.2d 276, 278 (1990) (quotation omitted), the trial court erred in granting the defendants' motion to dismiss as it pertained to this allegation.

*Reversed in part; remanded.*

All concurred.